**SAN ANTONIO STATE HOSPITAL,**
Appellant,

v.

**Kim KOEHLER, Appellee.**

No. 04–97–00486–CV.

Court of Appeals of Texas,
San Antonio.

June 17, 1998.

Rehearing Overruled Sept. 9, 1998.

S. Ronald Keister, Assistant Attorney General, Austin, for Appellant.

Thomas A. Crosley, Branton & Hall, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., LÓPEZ, J., and GREEN, J.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is an appeal from a jury verdict against appellant, San Antonio State Hospital (SASH), on a premises defect claim. A jury awarded appellee, Kim Koehler, $97,015.00, plus prejudgment interest of $34,128.12, post judgment interest, and costs, for injuries she sustained after escaping from SASH, where she was a patient. In light of a recent decision by the Texas Supreme Court, we reverse the judgment of the trial court and render judgment in favor of SASH. Koehler's conditional cross points are overruled.

### FACTS

In October 1992, Koehler, then 17, was a patient at SASH. She suffered from undifferentiated schizophrenia and had been judicially committed to the hospital. She was taking twenty-one separate medications and had be-

gun to show some signs of improvement, although her condition is incurable.

After attending a hospital Halloween party one afternoon, Koehler escaped the hospital grounds by exiting through a gaping hole in the fence that surrounds the facility. The fence, according to testimony, is about six-feet high, chain link, and runs around the entire premises. It is interrupted by a guard station, where guards admit and check in visitors. The fence, according to testimony and photographs, had at the time several large holes and, in places, could be lifted from the ground.

Koehler left the hospital voluntarily, with a male acquaintance, a former ex-patient who had apparently been visiting her nearly every day for the past month. Testimony at trial indicated that this former patient had gotten onto the premises through a hole in the fence. There was some testimony at trial that hospital policy prohibited visits from ex-patients; this testimony was disputed.

Koehler testified, by way of a videotaped deposition, that her male companion took her to a boarding house, where he made sexual advances, threatened her with a butcher knife, and eventually raped her. There was also evidence that Koehler "decompensated," or regressed, due to the sudden deprivation of her medications. Her mental state became increasingly impaired, and her relationship with her companion increasingly violent. After the two had a particularly physical fight, the proprietor of the boarding house called the police, who returned Koehler to the hospital. She had been absent for three days.

The morning after her return to the hospital, Koehler told her mother that she had been raped. She was given a medical examination, and the results of that examination were consistent with a sexual assault. The two women reported the incident to the police.

■ While waiting for her daughter during the medical examination, Koehler's mother learned from a hospital employee that there were several gaping holes in the fence around SASH, and that staff members knew about the holes. After complaining to hospital officials, Koehler's mother brought suit against SASH on behalf of herself (for bystander liability and as a guardian of Koehler) and on behalf of her daughter. Instructed verdicts narrowed the claims to one: liability for a premises defect. In addition, the claims brought on Cheryl's behalf were dismissed. However, SASH's requests for instructed verdicts, brought on the grounds that the hospital, as a state entity, was immune from suit, were denied. The jury found in favor of Koehler, and SASH appealed to this court, bringing the following points of error: (1) that because maintaining the fence was a decision left to SASH's discretion, the hospital was immune from suit; (2) that, as a matter of law, the hole in the fence could not have proximately caused Koehler's injuries; (3) that SASH had no duty to protect Koehler from the criminal acts of third parties that occurred off hospital premises; (4) that the court gave erroneous instructions and questions to the jury; (5) that there was no evidence or insufficient evidence of unreasonable risk of harm; (6) that there was no evidence or insufficient evidence that SASH had actual knowledge of a danger; (7) that there was no evidence or insufficient evidence that Koehler did not have actual knowledge of the danger; (8) that there was no or insufficient evidence that the condition of the premises was the proximate cause of Koehler's injuries; and (9) that because a governmental entity is not responsible for premises defects that existed prior to January 1, 1970, SASH cannot be liable for injuries caused by a fence that was built almost 100 years ago. We find as a matter of law that a hole in a fence that allows a mental patient to escape is not a "condition or use of tangible personal or real property" that could be the proximate cause Koehler's injuries.[1] *See Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471–72 (Tex.1991) (existence of proximate cause may be established as a matter of law where "the circum-

1. Because we find, as a matter of law, that the hole could not have been the proximate cause of Koehler's injuries, we need not consider SASH's other points of error.

stances are such that reasonable minds cannot arrive at a different conclusion").

Under the Tort Claims Act, a governmental entity may be held liable for "personal injury and death so caused by a condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). The parameters of this limited liability have been difficult to define. Courts have struggled to determine what is use of property, for which an entity may be held liable, and what is nonuse of property, for which an entity may not be held liable. *See, e.g., University of Tex. Medical Branch at Galveston v. York,* 871 S.W.2d 175 (Tex. 1994); *Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30 (Tex.1983); *Huckabay v. Irving Hosp. Found.,* 802 S.W.2d 758 (Tex.App.— Dallas 1990, writ denied); *Weeks v. Harris Co. Hosp. Dist.,* 785 S.W.2d 169 (Tex.App.— Houston [14th Dist.] 1990, writ denied). Courts have struggled to determine what the statute means by "tangible property." *See, e.g, Kerrville State Hosp. v. Clark,* 923 S.W.2d 582 (Tex.1996); *Clawson v. Wharton Co.,* 941 S.W.2d 267 (Tex.App.—Corpus Christi 1996, writ denied); *Thomas v. Brown,* 927 S.W.2d 122 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Robinson v. City of San Antonio,* 727 S.W.2d 40 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.). And courts have struggled with what is meant by "caused" the injury. *See, e.g., Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992) (discussing elements of causation); *Bossley v. Dallas County Mental Health & Mental Retardation, et al.,* 934 S.W.2d 689, 697 (Tex.App.—Dallas 1995) (discussing whether injury was too remote from negligent act), *rev'd,* 968 S.W.2d 339 (Tex.1998). It is this latter issue that we address.

■ A party's conduct is the proximate cause of injury if the action of the party is a substantial factor in bringing about the injury (the cause in fact) and if the injury is foreseeable. *See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 549–51 (Tex.1985). Because we find that the hole in the fence could not have been the cause in fact of Koehler's injuries, we need not address whether those injuries were foreseeable.

■ Cause in fact will not be found where the connection between the negligence and the injury is too remote. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). In ordinary negligence cases, the Texas Supreme Court has stated that cause in fact will not exist where the defendant's conduct does no more than "furnish the condition that makes the plaintiff's injury possible." *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 776 (Tex.1995). However, this principle had not, until very recently, been held to apply to premises conditions cases. *See Holder v. Mellon Mortgage Co.,* 954 S.W.2d 786, 801 (Tex.App.—Houston [14th Dist.] 1997, n.w.h.).

In *Holder,*the court of appeals held that applying the *Allbritton*principle to premises defect cases is "antithetical to the basis for imposing liability on landowners to those who come onto their property and are injured by a condition of that property." *Id.* This analysis is certainly reasonable. The entire basis for liability based on the condition of a premise has been that the condition at issue either directly injured the plaintiff or made such injury possible. Under this reasoning, landowners have been held liable for injuries caused by their failure to guard against the criminal acts of third parties. *See Nixon,* 690 S.W.2d at 550 (allowing liability finding where injury resulted from failure to lock doors on vacant apartment building); *Holder,* 954 S.W.2d at 800–801 (failure to secure garage not too attenuated to constitute legal cause of injury from third party's criminal act); *Allright, Inc. v. Pearson,* 711 S.W.2d 686, 690 (Tex.App.—Houston [1st Dist.] 1986), *aff'd in part, and rev'd in part on other grounds,* 735 S.W.2d 240 (Tex.1987) (affirming finding of liability where insufficient security permitted robbery to occur on premises).

However, the supreme court apparently now disagrees with this reasoning, at least in claims involving the Texas Tort Claims Act. In a case analogous to the one before this court, the supreme court has held that a property *condition* does not cause an injury if it does no more than furnish the *condition*

that makes the injury possible.[2] *Dallas County Mental Health and Mental Retardation, et al., v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998).

In *Bossley,* the parents of a 27–year–old mental patient sued the county hospital after their son escaped through an unlocked door and, in an apparent suicide, ran into the path of an oncoming truck. The trial court granted the hospital's motion for summary judgment, but the court of appeals reversed. *See Bossley,* 934 S.W.2d 689. The court of appeals held that a plaintiff attempting to bring suit under the Texas Tort Claims Act need only show that the alleged injury *involved* the use or condition of property. *Id.* at 694 (*relying on Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30, 31–32 (Tex.1983)).[3] The Dallas court relied on what it perceived to be a distinction in the law between the requirement that the act *involve* the use of property and the requirement of proximate cause inherent in all negligence claims. *Id.* at 695. In other words, according to the Dallas court, a plaintiff could show some negligent conduct *involving* the use of property and then show that the negligent conduct proximately caused the plaintiff's injury. *Id.*

While the Texas Supreme Court might have reversed the court of appeals on the more narrow ground that an unlocked door is not a use or condition of property, its decision is instead much more sweeping. In reversing, the court held that, to fall within the Texas Tort Claims Act, a plaintiff's injury must have directly resulted from the condition of the property. According to the court, the unlocked doors permitted escape, but they did not cause death. *Bossley,* at 341.

The similarities between the case before this court and *Bossley* are inescapable. In

fact, under the supreme court's analysis, causation here is even more remote than it was in *Bossley.* Here, the injuries occurred at a significant distance—both geographically and temporally—from the fence. *See id.* at 343 (the plaintiff's death was "distant geographically, temporally, and causally from the open doors"). If, as *Bossley* implies, the premises condition must do more than make the injury possible, then we cannot say that the hole in the fence here was the proximate cause of Koehler's injuries.

That plaintiffs wishing to hold state entities liable for their negligent acts face an increasingly difficult barrier is an unavoidable conclusion. *See, e.g., Clark,* 923 S.W.2d at 585 (decision not to administer drug is nonuse of property and thus not actionable); *York,* 871 S.W.2d at 178 (hospital immune from suit when it failed to diagnose broken hip); *Weeks,* 785 S.W.2d at 171 (failing to restrain mental patient is not misuse of property); *Kassen v. Hatley,* 887 S.W.2d 4 (Tex. 1994) (confiscation of medication was not misuse, but nonuse, of property, so hospital was not liable for patient's suicide). We note and fully concur in the supreme court's statement in *Bossley* that "the decision as to who should bear responsibility for governmental employees' misconduct should be made by the people's representatives." *Bossley,* at 341. As interpreted by the court, the current law provides plaintiffs with little recourse. We are bound by that interpretation, however, and therefore must reverse the judgment of the trial court.

### KOEHLER'S CROSS POINTS

In the event of reversal, Koehler raises two cross points as grounds for remanding

---

**2.** We express no opinion about how this holding will affect the substantial and solid body of case law holding landowners liable for criminal acts that resulted from the owners' failure to properly light or secure their property.

**3.** Although the supreme court states in *Bossley* that it is merely explaining its holding in *Salcedo,* we note that in *Salcedo,* the court relied on the following statement by Dean Keeton, addressing the state legislature when it was considering the Tort Claims Act, to support a liberal construction of the statute's language:

Most negligent conduct that results in personal injury involves either the use of tangible property or the creation or maintenance of a dangerous condition on tangible property. So it seems to me that whereas this might appear to be a somewhat restrictive waiver of immunity, it is not so in fact.

*Salcedo,* 659 S.W.2d at 32 (quoting Dean Keeton's Report to the Senate of the 62nd Legislature, Senate Interim Comm., 62nd Legislature of Texas, Report on Study of Texas Tort Claims Act, S. Res. 1041 (1971) app. C, at A–15).

this case to the trial court. We reject each point.

## General Negligence Claims

■ In her first cross point, Koehler argues that the trial court erred in granting SASH's motion for instructed verdict on her general negligence claims. We disagree.

The negligence claims eliminated by the trial court's granting SASH's motion for instructed verdict were: (1) that Koehler was inadequately supervised; (2) that SASH provided inadequate security; (3) that SASH failed to exercise the care required, in light of Koehler's condition; and (4) that SASH should not have allowed Koehler to roam the hospital grounds. Koehler claims that each of these allegations involves the use of tangible property—the fence. We disagree.

Liability under the Tort Claims Act exists only if the governmental entity committed negligence through the use of tangible property. We agree with Koehler that her claims regarding the hole in the fence clearly involve the use of property, although we are constrained by recent case law to hold that the property defect cannot have been the cause of her injuries. However, Koehler's other claims cannot be said to involve the use of property. Instead, they are allegations that the hospital was negligent in its care of Koehler. Such negligence is not actionable under the Tort Claims Act. *Brown v. Montgomery Co. Hosp. Dist.,* 905 S.W.2d 481, 484 (Tex.App.—Beaumont 1995, no writ).

■ Even if we agreed with Koehler that the claims *involved* the use of property, we would be constrained under *Bossley* to find that this involvement is insufficient to create liability. Koehler notes that there was testimony before the jury that she was negligently allowed to slip out a hospital door in making her escape. She asserts that the door is "tangible personal property" under the statute. In making this claim, however, Koehler relies on the Dallas court of appeals' decision in *Bossley,* which has been reversed. Moreover, this claim was not properly before the court. Koehler's attorneys did not learn of the possibility that she had slipped through a guarded door until trial, and the

trial judge denied their request to amend their pleadings to include that allegedly negligent act.

## Trial Amendment

■ It is this denial that forms the basis of Koehler's second cross point. Koehler claims that the trial court erred in denying her request to amend her pleadings to add a claim based on SASH employees' misuse of the door through which she escaped. According to Koehler, the trial judge had no discretion to refuse the amendment. Alternately, she claims that any discretion was abused, because SASH did not show surprise or prejudice by the amendment.

■ A trial court may not refuse a trial amendment unless the opposing party shows surprise or prejudice of the amendment asserts a new cause of action or defense and thus is prejudicial on its face. Tex.R. Civ. P. 63; *Hart v. Moore,* 952 S.W.2d 90, 95 (Tex. App.—Amarillo 1997, pet. denied). We find that the requested amendment was facially prejudicial because it presented a new basis for liability, the alleged misuse of the door, a basis for which neither side had prepared. Where a trial amendment is prejudicial on its face, the opposing party need not demonstrate surprise or prejudice. *Hardin v. Hardin,* 597 S.W.2d 347, 348–50 (Tex.1980). We reject this claim.

### Conclusion

On the basis of the supreme court's determination that a premises condition must actually be the instrumentality that causes the plaintiff's harm, we must reverse the judgment of the trial court. Finding no merit in the plaintiff's cross claims, we render a judgment in favor of SASH.

GREEN, J., concurring in the judgment only.