**Cindy AMADOR and Carol Amador, Appellants,**

v.

**SAN ANTONIO STATE HOSPITAL, Appellee.**

No. 04–98–00832–CV.

Court of Appeals of Texas, San Antonio.

April 7, 1999.

J. Thomas Rhodes, III, Sean Lyons, Lyons & Rhodes, P.C., San Antonio, for Appellant.

Paul D. Palmer, John P. Giberson, Assistant Attorney General, Austin, for Appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice and ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice

This is an appeal from an order granting a plea to the jurisdiction filed by San Antonio State Hospital ("SASH"). In their brief, the appellants, Cindy Amador and Carol Amador ("Amadors"), assert that the trial court erred in granting the plea to the jurisdiction because: (1) their first amended original petition alleged that their injuries were caused by state employees' negligent misuse of tangible personal property; and (2) the state employees' misuse of tangible personal property was not an exercise of governmental discretion. Based on existing Texas Supreme Court precedent, we must affirm the trial court's order.

### STANDARD OF REVIEW

A plea to the jurisdiction contests the trial court's authority to determine the subject matter of the cause of action. *Texas Parks & Wildlife Dept. v. Garrett Place, Inc.*, 972 S.W.2d 140, 142 (Tex.App.—Dallas 1998, no pet.). The plaintiff bears the burden of alleging facts to affirmatively show that the trial court has subject matter jurisdiction. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *Texas Parks & Wildlife Dept. v. Garrett Place, Inc.*, 972 S.W.2d at 142–43. The trial court looks solely to the allegations in the pleadings in reaching its decision, and we accept the allegations in the pleadings as true and construe them in favor of the pleader in conducting our review. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d at 446; *Texas Parks & Wildlife Dept. v. Garrett Place, Inc.*, 972

S.W.2d at 143. Whether a trial court has subject matter jurisdiction is a question of law that we review *de novo. Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *cert. filed,* 67 U.S.L.W. 3149 (Aug. 6, 1998); *American Pawn & Jewelry, Inc. v. Kayal,* 923 S.W.2d 670, 672 (Tex.App.—Corpus Christi 1996, writ denied).

## Pleading Allegations

In their first amended original petition, the Amadors allege that Cindy was a patient in the care and custody of SASH. On September 30, 1996, Cindy was given a ground pass and allowed out on the hospital grounds without supervision. While out on the grounds, Cindy was assaulted and sexually assaulted by several other patients. Carol, Cindy's mother, came upon Cindy during the assault and sexual assault and witnessed the occurrence within close proximity. The Amadors say that the injuries and damages they sustained were caused by the condition or use of tangible personal property, including, but not limited to: (1) the misuse of a ground pass (a/k/a a "day pass");[1] (2) the misuse of entrance and exit doors, i.e., unlocking the door to permit Cindy to exit unsupervised onto the hospital grounds; (3) providing a chapel without lockable doors and/or using a chapel without proper security; (4) providing hospital policy and/or procedure handbooks in a defective condition or misusing the handbooks; and (5) misusing hospital licensing standards and Texas Department of Health publications. The Amadors also alleged that SASH was liable for the spoilation of evidence[2] and the negligent implementation of policy—specifically, the Amadors say that SASH improperly administered medication to its patients, improperly monitored its patients who were required to be under constant surveillance; improperly reacted to an as-

sault and/or sexual assault situation, and improperly investigated the occurrence in question.

## Sovereign Immunity

 Under the doctrine of sovereign immunity, a governmental unit is not liable for the torts of its officers or agents in the absence of a constitutional or statutory provision creating such liability. *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). The Texas Tort Claims Act ("TTCA") creates a limited waiver of sovereign immunity. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 1997). Under the TTCA, a governmental entity may be held liable for personal injury caused by a condition or use of tangible personal property. Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 1997). We must determine whether the Amadors' injuries, as alleged in their pleadings, were caused by a condition or use of tangible personal property, such that SASH's sovereign immunity was waived.

### A. Tangible Personal Property

 One of the requirements the Amadors were required to show in order to overcome SASH's sovereign immunity is that their injuries were caused by a condition or use of **"tangible personal property."** Tangible personal property refers to something that has a corporeal, concrete, and palpable existence. *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175, 178 (Tex.1994). Information is an abstract concept and is intangible. *Id.* at 179. The fact that the information is recorded does not render the information tangible property, and immunity is not waived for claims based on the misuse of information. *Id.*

---

1. Cindy was entitled to the day pass because she was given a level III status after her initial evaluation by SASH staff, granting her free access to the hospital's grounds.

2. The Amadors have not asserted any issue in their brief relating to their spoilation of evidence claim.

 The following claims asserted by the Amadors did not relate to a condition or use of tangible personal property: (1) the misuse of the ground pass; (2) the provision of defective hospital policy and/or procedure handbooks or the misuse of such handbooks; (3) the misuse of hospital licensing standards and Texas Department of Health publications; and (4) the negligent implementation of hospital policy. Each of these claims is based on SASH's misuse of information, which is intangible. *See id.; Kassen v. Hatley,* 887 S.W.2d 4, 14 (Tex.1994) (extending reasoning in *York* to medical records, patient files, and emergency room procedures manual); *Tanner v. East Texas Mental Health, Inc.,* 889 S.W.2d 3, 4–5 (Tex.App.—Tyler 1994, no writ) (holding claim based on misuse of policy and procedure manual barred by immunity because information is intangible). The real substance of these complaints is the underlying allegation that SASH should have evaluated Cindy so that she was not given the ground pass that allowed her unsupervised access to the hospital grounds. Such a claim does not implicate a waiver of sovereign immunity under the TTCA. *See Bossley,* 968 S.W.2d at 343 (holding real substance of complaint was failure to properly restrain patient for which immunity is not waived); *Laman v. Big Spring State Hosp.,* 970 S.W.2d 670, 672 (Tex.App.—Eastland 1998, pet. denied) (injury based on failure to properly supervise patient is not injury caused by condition or use of property); *Castillo v. Tropical Texas Center for Mental Health & Mental Retardation,* 962 S.W.2d 622, 624–25 (Tex.App.—Corpus Christi 1997, no writ) (governmental entity immune from claim based on misuse of medical records); *Texas Youth Comm'n v. Ryan,* 889 S.W.2d 340, 344–45 (Tex.App.—Houston [14th Dist.] 1994, no writ) (negligence in evaluation and supervision of patient does not implicate immunity waiver); *cf. Cherry v. Texas Dept. of Criminal Justice,* 978

S.W.2d 240, 242–43 (Tex.App.—Texarkana 1998, no pet. h.) (holding misclassification of prisoner based on information in diagnostic test evaluations did not constitute use of tangible personal property).

**B. Proximate Causation**

 The only other claims asserted by the Amadors relate to (1) the misuse of entrance and exit doors, i.e., unlocking the door to permit Cindy to exit unsupervised onto the hospital grounds; and (2) providing a chapel without lockable doors and/or using a chapel without proper security.[3] However, "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible." *Bossley,* 968 S.W.2d at 343.

 The Amadors argue that we can distinguish the Texas Supreme Court's decision in *Bossley* based on the geographical, temporal and causal factual distinctions between this case and *Bossley.* We must disagree. Applying the language of the *Bossley* decision to this case, we must conclude:

> The unlocked doors permitted [Cindy's unsupervised exit] but did not cause [her damage].... Although [Cindy's unsupervised exit] through the unlocked doors was part of a sequence of events that ended in [her damage], the use and condition of the doors were too attenuated from [her damage] to be said to have caused it.

*Bossley,* 968 S.W.2d at 343. We further note that the condition of the doors in this case, i.e., that they were unlocked, was not even the result of a negligent act in not locking them or repairing them. The doors were unlocked for Cindy based on her initial evaluation.

We understand the Amadors' assertions regarding the geographic and temporal distinctions; however, we must look to the conclusion in *Bossley* to determine the

---

**3.** Presumably, the assault occurred in a chapel on the hospital's grounds although this is not clear from the pleadings.

proper outcome in this case. In *Bossley*, the Court concluded: "The real substance of plaintiffs' complaint is that Roger's death was caused, not by the condition or use of property, but by the failure of Hillside's staff to restrain him once they learned he was suicidal." Similarly, the real substance of the Amadors' complaint is SASH's failure to properly evaluate and restrain Cindy. The TTCA does not waive immunity for such a complaint. *See Bossley*, 968 S.W.2d at 343 (holding real substance of complaint was failure to properly restrain patient for which immunity is not waived); *Laman v. Big Spring State Hosp.*, 970 S.W.2d at 672 (injury based on failure to properly supervise patient is not injury caused by condition or use of property); *Castillo v. Tropical Texas Center for Mental Health & Mental Retardation*, 962 S.W.2d at 624–25 (governmental entity immune from claim based on misuse of medical records); *Texas Youth Comm'n v. Ryan*, 889 S.W.2d at 344–45 (negligence in evaluation and supervision of patient does not implicate immunity waiver); *cf. Cherry v. Texas Dept. of Criminal Justice*, 978 S.W.2d at 242–43 (holding misclassification of prisoner based on information in diagnostic test evaluations did not constitute use of tangible personal property).

### CONCLUSION

While we may not have interpreted the TTCA as narrowly as the Texas Supreme Court, we are bound by its precedent. Based on that precedent, the claims asserted by the Amadors either did not involve the use or condition of tangible personal property or were not the proximate cause of their injuries. The trial court's order is affirmed.

Dissenting opinion by: ALMA L. LÓPEZ, Justice.

LÓPEZ, Justice, dissenting.

I respectfully dissent from the majority opinion. I submit that the Amadors pass the new test construed by the supreme court in *Bossley* and that their cause of action falls within the Texas Tort Claims Act ("TTCA") waiver of government immunity. Moreover, San Antonio State Hospital's ("SASH") sovereign immunity was waived because the Amadors' injuries were caused by a condition or use of tangible property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.21 (Vernon 1997).

The present case is distinguishable from the supreme court's decision in *Bossley* and this court's prior decision in *Koehler* based on geographical, temporal, and causal factual distinctions. *See Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998) (requiring plaintiff's injuries be closely related "geographically, temporally, and causally" to the misuse of tangible personal property); *San Antonio State Hospital v. Koehler*, 981 S.W.2d 32, 34 (Tex.App.—San Antonio 1998, no pet.). The majority states that although Cindy Amador's unsupervised exit through the unlocked doors was part of the sequence of events that ended in her rape, the use and condition of the doors was too attenuated from the harm to be said to have caused it. I disagree. I submit that the injuries to the Amadors occurred shortly after, and in close proximity to, the instances of negligent misuse of tangible personal property which caused them.

In *Bossley*, a mental health patient escaped through unlocked doors and subsequently committed suicide. *See Bossley*, 968 S.W.2d at 341. The supreme court points out several intervening causes which occurred between the misuse of tangible property and Roger Bossley's death. *See id.* at 340. Roger surprised the state employee, pushed her aside, and fled out the door. *See id.* After fleeing the hospital, Roger ran a half mile to the interstate highway where he attempted to obtain a ride hitchhiking on both sides of the freeway, and when he was about to be apprehended by hospital personnel and the police, he leapt in front of an oncoming

truck and was killed. *See id.* at 341. The supreme court held that property does not cause injury if it does no more than furnish the condition that makes the injury possible. *See id.* Likewise, the unlocked doors permitted Roger's escape but did not cause his death. *See id.* Although Roger's escape through the unlocked doors was part of a sequence of events that ended in his suicide, the use and condition of the doors were too attenuated from Roger's death to be said to have caused it. *See id.* Thus, Roger's death was distant geographically, temporally, and causally from the open doors at the hospital. *See id.*

Similarly, in *Koehler,* a mental patient escaped the hospital grounds by exiting through a gaping hole in the fence that surrounded the facility. *See Koehler,* 981 S.W.2d at 34. Koehler left with a male companion who took her to a boarding house and subsequently threatened her with a butcher knife and eventually raped her. *See id.* After three days, Koehler returned to the hospital and later reported to her mother that she had been raped at a distant boarding house. *See id.* This court held that under the supreme court's analysis, causation was even more remote than it was in *Bossley.* *See id.* at 35. Because the rape occurred at a significant distance—both geographically and temporally—from the fence, the hole in the fence was not the proximate cause of Koehler's injuries. *See id.*

The instant case, however, is distinguishable from *Bossley* and *Koehler.* Cindy Amador's sexual assault was directly related to her release outside on the hospital grounds. Cindy's injuries were immediate and contiguous after hospital personnel misused the patient entrance and exit doors and let her out on the grounds. Moreover, there was no intervening cause as was pointed out in *Bossley* and *Koehler.* The supreme court's requirement that plaintiff's injuries must be immediate and directly related "geographically, temporally, and causally" to the misuse of tangible

property appears to be an essential element to waive sovereign immunity of a government entity. *See Bossley,* 968 S.W.2d at 343. Since the Amadors' injuries were immediate and "geographically, temporally, and causally" related to the hospital staff's misuse of SASH's entrance and exit doors, the Amadors' cause of action falls within the TTCA waiver of government immunity. Because I would find that SASH's sovereign immunity was waived, I respectfully dissent.