TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, The State of Texas, The Wichita Falls State Hospital, and Don Gilbert in his Official Capacity as Commissioner of Texas Department of Mental Health and Mental Retardation, Appellants,

v.

Robin LEE, Appellee.

No. 2–99–145–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 15, 2001.

John Cornyn, Atty. Gen. of TX, Andy Taylor, First Asst. Atty. Gen., Gregory S. Coleman, Linda S. Eads, Deputy Attys. Gen. for Litigation, Toni Hunter, Chief General Litigation Div., James B. Pinson, Laurie R. Eiserloh, Peter B. Plotts, Asst. Attys. Gen., Lisa R. Eskow, Asst. Sol. Gen., Austin, for Appellants.

Gene Douglass, Wichita Falls, for Appellee.

Before CAYCE, C.J.; LIVINGSTON, J.; and RICHARDS, J., Sitting by Assignment.

## OPINION

CAYCE, Justice.

Appellee Robin Lee was sexually assaulted by an HIV-positive patient while she was under the care of Wichita Falls State Hospital. She filed suit against appellants under the Texas Tort Claims Act alleging that her injuries were caused by a condition or use of tangible personal property [1] because employees of Wichita Falls State Hospital failed to lock the interior door to her room and to provide locking devices on the door separating the women's and the men's wings of the hospital. Lee also seeks damages under the "patient's bill of rights" provision of the Texas Health and Safety Code for abuse, neglect, and exploitation.[2] Appellants filed a plea to the jurisdiction based on sovereign immunity which the trial court denied.[3] In

---

1. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1997).

2. Tex.Health & Safety Code Ann. § 321.002 (Vernon Supp.2001); *see also* 25 Tex.Admin.Code § 404.154(24) (2000).

3. *See* Tex.Civ.Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2001).

this interlocutory appeal, appellants contend that the trial court erred in denying their plea because Lee's suit against appellants is jurisdictionally barred by sovereign immunity.

We hold that Lee has not alleged a cause of action under the Tort Claims Act because the unlocked hospital doors did not proximately cause Lee's injury, but merely furnished the condition that made the assault and resulting injury possible. We further hold that the legislature has not waived the State's immunity from suit for violations of the patient's bill of rights. We will, therefore, reverse and render judgment dismissing Lee's suit against appellants.

## Background Facts

On April 22, 1994, Lee was sexually assaulted by an HIV-positive patient while she was under the care of Wichita Falls State Hospital (the hospital) for a mental disorder that caused her to be hypersexual and promiscuous. She subsequently filed suit against appellants Texas Department of Mental Health and Mental Retardation (MHMR), the State of Texas, the hospital, and Don Gilbert, Commissioner of MHMR (collectively, appellants). In her suit, Lee alleged a cause of action under section 101.021(2) of the Texas Tort Claims Act based on the hospital's failure to lock the door to her room and to provide locking devices on the doors between the men's and women's wings of the hospital, which she contends constituted both a misuse of tangible property and a defective condition that proximately caused her injuries. Lee also alleged a cause of action under section 321.002 of the Texas Health and Safety Code for violations of the "patient's bill of rights"; specifically, "freedom from mistreatment, abuse, neglect, and exploitation." [4]

Appellants filed a plea to the jurisdiction, asserting that Lee had failed to allege facts that would support a claim under section 101.021(2) of the Tort Claims Act and that sovereign immunity deprived the trial court of subject matter jurisdiction over her suit for violations of the patient's bill of rights. The trial court denied the plea stating only that the plea "lack[s] merit."

## Standard of Review

We review a trial court's ruling on a plea to jurisdiction de novo.[5] In determining whether jurisdiction exists, we accept the allegations in the pleadings as true and construe them in favor of the pleader.[6] We must also consider evidence relevant to jurisdiction when it is necessary to resolve the jurisdictional issue raised.[7]

## Sovereign Immunity

Sovereign immunity, unless waived, protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent legislative consent to sue the State.[8] The doctrine of sovereign immunity embraces two principles: immunity from suit and immunity from liability.[9] Immunity from suit bars a lawsuit against the State, unless the legislature expressly

4. TEX.HEALTH & SAFETY CODE ANN. § 321.002; 25 TEX.ADMIN.CODE § 404.154(24).

5. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

6. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *City of Saginaw v. Carter*, 996 S.W.2d 1, 2–3 (Tex.App.—Fort Worth 1999, pet. filed).

7. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 555 (2000).

8. *Fed. Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 405 (Tex.1997); *Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 353 (Tex.App.—Fort Worth 1999, pet. denied).

9. *Fed. Sign*, 951 S.W.2d at 405; *Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970).

gives its consent to the suit.[10] Absent such consent, the trial court does not have subject matter jurisdiction to hear the case.[11]

 By contrast, immunity from liability protects the State from judgments even if the legislature has expressly given consent to the suit.[12] The legislature neither creates nor admits liability by granting permission to be sued.[13] Immunity from liability is an affirmative defense, not a jurisdictional issue.[14]

 The legislature may consent to suit and liability by statute or by legislative resolution.[15] "It is a well-established rule that for the Legislature to waive the State's sovereign immunity, it must do so by clear and unambiguous language."[16] We are mindful, however, that the rule requiring a waiver of sovereign immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the legislature is disregarded.[17] "Legislative intent remains the polestar of statutory construction."[18] Thus, if a statute leaves no reasonable doubt of its purpose, we do not require perfect clarity, even in determining whether sovereign immunity has been waived.[19]

 In determining whether immunity from suit has been waived under the Tort Claims Act, we are also instructed that, while waiver of immunity under the Act is to be liberally construed, this liberal construction must be balanced with the legislative intent of waiving immunity only to a limited degree.[20]

> [I]t is important to recognize that the Legislature intended the waiver in the Act to be limited, not unlimited. . . .
>
> . . . .
>
> . . . [T]he waiver of immunity in the Tort Claims Act is not, and was not intended to be, complete. Arguments for applications of the Act that would essentially result in its waiver becoming absolute must therefore be rejected as contrary to the Act's fundamental purpose.[21]

With these rules to guide us, we will examine the Tort Claims Act and the Health and Safety Code as they apply, if at all, to Lee's claims against appellants to determine whether the use or condition of property alleged by Lee proximately caused her injuries, and whether the legislature has by clear and unambiguous language waived sovereign immunity for Lee's patient's bill of rights claim.

## Tort Claims Act

 Under the relevant provisions of the Tort Claims Act, a governmental unit in this state is liable for:

10. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999); *Fed. Sign*, 951 S.W.2d at 405.

11. *Jones*, 8 S.W.3d at 638.

12. *Id.; Fed. Sign*, 951 S.W.2d at 405.

13. *Fed. Sign*, 951 S.W.2d at 405; *see also* TEX.CIV.PRAC. & REM.CODE ANN. § 107.002(b) (Vernon 1997) ("A resolution granting permission to sue does not waive to any extent immunity from liability.").

14. *Jones*, 8 S.W.3d at 638.

15. *Fed. Sign*, 951 S.W.2d at 405; *Mo. Pac.*, 453 S.W.2d at 814.

16. *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980); *see also Fed. Sign*, 951 S.W.2d at 405; *City of LaPorte v. Barfield*, 898 S.W.2d 288,

292 (Tex.1995); *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994).

17. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993); *Harris County Dist. Attorney's Office v. J .T.S.*, 807 S.W.2d 572, 574 (Tex.1991).

18. *City of LaPorte*, 898 S.W.2d at 292

19. *Id.*

20. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341–42 (Tex.) (history of Act's passage shows that its "fundamental purpose" is limited waiver of immunity), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

21. *Id.*

(2) personal injury and death so caused by a *condition or use* of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.[22]

To state an actionable claim under section 101.021(2) based upon the use or misuse of tangible property, personal injury or death must be *proximately caused by the condition or use of tangible property.*[23] The requirement of proximate cause requires more than mere involvement of the property.[24] Although the degree of involvement is difficult for courts to discern in certain cases, the rationale and holdings of supreme court decisions make clear that there must be a close causal relationship between the condition or use of the property and the resulting injury.[25] This is also the rule followed by the majority of our sister courts.[26]

 In this case, Lee complains of both a use of property—leaving the interior door to her room unlocked—and a condition of property—no locking device on the door leading from the men's wing to the women's wing of the hospital. Neither can be said to have caused Lee's injuries from the sexual assault. "Property does not cause injury if it does no more than furnish the condition that makes the injury possible."[27] The unlocked doors permitted the assailant's entry into Lee's room,

---

**22.** TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (emphasis supplied).

**23.** *Bossley,* 968 S.W.2d at 342–43 (the negligent conduct "must involve 'some condition or some use' of tangible property"). "Use" of tangible property means "[to] put or bring [the property] into action or service; to employ for or apply to a given purpose." *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 584 (Tex.1996). "Use" also includes "misuse" of property. *See Smith v. Tarrant County,* 946 S.W.2d 496, 501 (Tex.App.—Fort Worth 1997, writ denied) (op. on reh'g).

**24.** *Bossley,* 968 S.W.2d at 343.

**25.** *Compare Robinson v. Cent. Tex. MHMR Ctr.,* 780 S.W.2d 169, 171 (Tex.1989) (hospital's failure to provide epileptic patient life preserver was cause of his drowning), *Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 300 (Tex. 1976) (school coach's failure to allow student to use knee brace resulted in injuries), *and Overton Mem'l Hosp. v. McGuire,* 518 S.W.2d 528, 529 (Tex.1975) (patient's injuries from falling out of bed proximately caused by providing bed without rails), *with Bossley,* 968 S.W.2d at 343 (hospital employee's failure to lock doors too attenuated from patient's suicide to be proximate cause), *Clark,* 923 S.W.2d at 586 (failure to prescribe certain form of medication did not cause patient to murder his estranged wife), *and Kassen v. Hatley,* 887 S.W.2d 4, 14 (Tex.1994) (hospital's failure to give patient medication did not cause her suicide). *But see Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30, 33 (Tex.1983) (holding that hospital proximately caused patient's death by misreading electrocardiogram).

**26.** *See Scott v. Prairie View A & M Univ.,* 7 S.W.3d 717, 720 (Tex.App.—Houston [1st Dist.] 1999, pet. denied) (use of money to pay for hotel room by school counselor who sexually assaulted student cannot constitute use of property that proximately caused injury); *Univ. of Tex. Med. Branch at Galveston v. Hardy,* 2 S.W.3d 607, 610 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (hospital's improper use of cardiac monitoring equipment directly resulted in patient's death); *San Antonio State Hosp. v. Koehler,* 981 S.W.2d 32, 36 (Tex.App.—San Antonio 1998, pet. denied) (hole in hospital fence not proximate cause of patient's sexual assault at distant location); *Lamar Univ. v. Doe,* 971 S.W.2d 191, 196 (Tex.App.—Beaumont 1998, no pet.) (use of dormitory room did not cause children's injuries which were caused by room's occupant who paid them to be photographed in explicit sexual poses); *Marroquin v. Life Mgmt. Ctr. for MH/MR Servs.,* 927 S.W.2d 228, 232 (Tex.App.—El Paso 1996, writ dism'd w.o.j.) (day center's failure to provide security devices to protect and supervise patients was not actionable under Tort Claims Act). *But cf. Michael v. Travis County Hous. Auth.,* 995 S.W.2d 909, 914 (Tex.App.—Austin 1999, no pet.) (although recognizing need for close causal connection between property and injury, court held that defective fence allowing dogs to escape proximately caused injuries to passers-by).

**27.** *Bossley,* 968 S.W.2d at 343; *see Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 776 (Tex.1995); *see also Bush v. Tex. Dep't of Protective & Regulatory Servs.,* 983 S.W.2d 366, 369 (Tex .App.—Fort Worth 1998, pet. denied).

but did not cause the sexual assault resulting in her injuries. Although the assailant's entry through the unlocked doors was part of a sequence of events that ended in the sexual assault, the use and unlocked condition of the doors were too attenuated from Lee's injuries to be said to have caused them. The true substance of Lee's complaint is that the sexual assault was caused, not by the condition or use of the hospital doors, but by the failure of the hospital staff to protect her from her assailant when they knew that she was hypersexual and promiscuous and that male patients had exploited her hypersexuality in the past; conduct that does not fall within the Act's limited waiver of immunity.

The facts in this case closely resemble the facts in *Bossley*. In *Bossley*, a patient escaped from the hospital and committed suicide. The patient was able to exit through the locked double doors of the hospital by following a hospital employee who had failed to close the self-locking interior door and then by pushing that employee aside after the employee had unlocked the exterior door.[28] The court held that there was no waiver of immunity in that case because neither the use of property (unlocking the outer door) nor the condition of property (the unlocked inner door) caused the patient's suicide.[29] According to the court, the patient's death was too distant geographically, temporally, and causally from the open doors at the hospital to be said to have caused his death. The court determined that the "real substance" of plaintiff's complaint in *Bossley* was that the death was caused, not by a condition or use of property which was required to bring the suit within the Act's limited waiver of immunity, but by

the failure of the hospital staff to restrain him once they learned that he was still suicidal.[30]

This case is also analogous to *Amador v. San Antonio State Hospital*[31] and *Koehler*.[32] In *Amador*, an unsupervised patient was sexually assaulted by several other patients while on the hospital grounds. The patient claimed that by unlocking the doors to permit her to go outside unsupervised, the hospital misused property that resulted in her sexual assault. Relying on *Bossley*, the court held that although the unlocked doors permitted the patient's unsupervised exit, the doors were too attenuated from the sexual assault to have caused the patient's injuries.[33] As in *Bossley*, the court concluded that the real substance of the patient's complaints was not that the hospital misused property, but that the hospital acted negligently by failing to properly evaluate and restrain the patient.[34]

In *Koehler*, a female patient escaped the hospital premises with a male companion through a large hole in the hospital's fence. The male companion brought the patient to a distant boarding house where he sexually assaulted her. The patient filed suit against the hospital, alleging that the hole in the hospital's fence constituted a premises defect.[35] In holding that there was no waiver of immunity, the court noted the causation was even more remote than in *Bossley* because the injury occurred at a significant distance—both geographically and temporally—from the hospital's fence.[36] Citing *Bossley*, the court held that to fall within the Tort Claims Act, a plaintiff's injury must have directly result-

28. *Bossley*, 968 S.W.2d at 340–41.

29. *Id.* at 343.

30. *Id.*

31. 993 S.W.2d 253, 254–58 (Tex.App.—San Antonio 1999, pet. denied).

32. 981 S.W.2d at 33–37.

33. *Amador*, 993 S.W.2d. at 256.

34. *Id.* at 257.

35. *Koehler*, 981 S.W.2d at 34.

36. *Id.* at 36.

ed from the condition of the property.[37] Because the patient's sexual assault was not the direct result of the hole in the fence, the court held the patient failed to establish proximate cause.[38]

Lee incorrectly analogizes this case to *McGuire*, where the supreme court held that immunity was waived by section 101.021(2) for a plaintiff's claim that he was injured when he fell out of his hospital bed because it was not equipped with side rails.[39] In *McGuire*, however, the plaintiff's injury was immediately and directly related to the absence of restraints on the side of the bed .[40] Lee's injuries, however, were temporally and causally distant from the unlocked doors.

Lee's reliance on *Lowe*[41] and *Robinson*[42] is equally misplaced. In *Lowe*, the supreme court held that immunity was waived for a claim by a football player that his coach refused to allow him to wear a knee brace.[43] The court in *Robinson* held that immunity was waived for a claim that an epileptic young man was allowed to swim without a life preserver.[44] In a subsequent decision, the court held that "[t]he precedential value of these cases is ... limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries."[45] Con-

trary to Lee's assertions, the hospital in this case cannot be said to lack an integral safety component because its interior doors were not kept locked twenty-four hours a day.[46]

After reviewing Lee's allegations and the evidence in the record relevant to the immunity issue raised by appellant, we conclude that Lee has not asserted a claim that falls within section 101.021(2) of the Tort Claims Act.[47] We, therefore, sustain appellants' first issue.

## Health and Safety Code

Lee contends that the legislature expressly waived sovereign immunity from suits based on violations of the Health and Safety Code's "patient's bill of rights," by providing in section 321.003 of the code that a patient harmed by a violation of the patient's bill of rights while under the care of a mental health facility "may sue" the facility for damages and other relief. This is an issue of first impression.

Section 321.002 of the Health and Safety Code requires MHMR and other state health care regulatory agencies by rule to adopt a "patient's bill of rights" to protect the "health, safety, and rights" of a patient under the care of an inpatient mental health facility.[48] Section 321.003 provides that a "treatment facility" or "mental health facility" that violates a right

**37.** *Id.*

**38.** *Id.*

**39.** *McGuire*, 518 S.W.2d at 529.

**40.** *Id.; see also Bossley*, 968 S.W.2d at 343 (distinguishing *McGuire* on same grounds).

**41.** 540 S.W.2d at 298–301.

**42.** 780 S.W.2d at 169–71.

**43.** *Lowe*, 540 S.W.2d at 300.

**44.** *Robinson*, 780 S.W.2d at 171.

**45.** *Clark*, 923 S.W.2d at 585.

**46.** *Cf. Bossley*, 968 S.W.2d at 343 (holding that failure to lock doors does not constitute lack of integral safety component where unlocked doors furnished condition that led to patient's suicide).

**47.** The dissent suggests that, in the alternative, we should remand for a hearing on the plea to the jurisdiction to allow Lee an opportunity to present additional evidence supporting trial court jurisdiction over her Tort Claims Act claim. *See Bland*, 34 S.W.3d at 549 (holding that trial court is required to consider relevant evidence in support of plea to jurisdiction). Neither Lee nor appellants, however, have complained that the trial court erroneously refused to consider evidence other than the allegations in Lee's pleadings necessary to resolve the jurisdictional issues raised by appellants' plea to the jurisdiction.

**48.** TEX.HEALTH & SAFETY CODE ANN. § 321.002(a).

adopted pursuant to section 321.002 "is liable" to any person under the care of the facility who is harmed by the violation, and that the person harmed "may sue" the facility for damages and other relief.[49]

### § 321.003. Suit for Harm Resulting From Violation

(a) A *treatment facility* or *mental health facility* that violates a provision of, or a rule adopted under, this chapter, Subtitle C of Title 7 [Section 571.001 *et seq.*], or Chapter 241, 462, 464, or 466 *is liable* to a person receiving care or treatment in or from the facility who is harmed as a result of the violation.

(b) A person who has been harmed by a violation *may sue* for injunctive relief, damages, or both.[50]

Importantly, the terms "treatment facility" and "mental health facility" are not expressly defined in the statute; rather, the statute provides that " '[m]ental health facility' has the meaning assigned by Section 571.003 [of the code]" and that " '[t]reatment facility' has the meaning assigned by Section 464.001 [of the code]." [51] Section 571.003(12) defines mental health facility as a "facility operated by [the Texas Department of Mental Health and Mental Retardation], a federal agency, a political subdivision, or any person." [52] Treatment facility is defined in the pertinent parts of section 464.001 as "a public or private hospital; ... a community mental health center; ... or ... any oth-

er facility that offers or purports to offer treatment." [53] Appellants argue that the incorporation of these definitions into the statute clearly and unambiguously waives the State's immunity from suit for violations of the patient's bill of rights. We disagree.

In *Duhart,* the Supreme Court of Texas construed a statute providing worker's compensation benefits to state highway employees that adopted an exemplary damages provision in another law.[54] The court held that the incorporation of one provision into another law, without more, did not clearly and unambiguously waive the State's immunity from liability for exemplary damages.[55] The court reached the same conclusion in *City of LaPorte,* when it construed a statute forbidding "a person" from retaliating against an employee who seeks worker's compensation benefits.[56] The court held that the adoption of that statute in another statute that defined "person" to include political subdivisions gives no clearer indication of legislative intent to waive immunity than did the adoption of the exemplary damage provision of another law into the statute construed in *Duhart.*[57]

Applying the rules of construction followed by the supreme court in *Duhart* and *City of LaPorte,* we hold that the mere incorporation in section 321.001 of another statute that defines treatment facility and mental health facility to include

---

49. *Id.* § 321.003(a)-(b).

50. *Id.* (emphasis supplied). Section 321.003 continues as follows:

> (c) A plaintiff who prevails in a suit under this section may recover actual damages, including damages for mental anguish even if an injury other than mental anguish is not shown.
> (d) In addition to an award under Subsection (c), a plaintiff who prevails in a suit under this section may recover exemplary damages and reasonable attorney fees.
> *Id.* § 321.003(c)-(d).

51. *Id.* § 321.001(4), (6).

52. *Id.* § 571.003(12).

53. *Id.* § 464.001(5)(A), (G), (L) (Vernon 1992).

54. *Duhart,* 610 S.W.2d at 742–43.

55. *Id.*

56. *City of LaPorte,* 898 S.W.2d at 292–93.

57. *Id.* at 296; *see also Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 6 (Tex.2000) (concluding that section 15(b) of State Applications Act is clearer expression of intent to waive immunity than "mere incorporation" of Anti–Retaliation law into Act).

public facilities[58] does not, without more, manifest a clear legislative intent to the contrary to *waive immunity*.[59] While the statute evidences the legislature's intent to authorize actions for violations of the patient's bill of rights against private facilities licensed by state health care regulatory agencies, the statute does not, as it might, clearly express an intent to *waive immunity* by authorizing such actions against governmental entities. Indeed, the legislative history of the statute indicates that the statute was enacted to address abuse that had reportedly occurred in *private* mental health facilities.[60] There is nothing in the statute's history to suggest that the legislature was even aware of the existence of similar abuse in public facilities. Thus, we hold that the statute possesses meaning and purpose absent waiver of immunity.[61] Accordingly, we sustain appellants' second issue.

## Conclusion

In sum, we hold that Lee has not stated an actionable claim against appellants under section 101.021(2) of the Tort Claims Act and that section 321.003 of the Health and Safety Code does not waive sovereign immunity from suit for violations of the patient's bill of rights. Accordingly, we reverse and render judgment dismissing the suit against appellants on the grounds that Lee's actions are jurisdictionally barred by sovereign immunity.

LIVINGSTON, J., filed a concurring and dissenting opinion.

LIVINGSTON, Justice, concurring and dissenting.

Texas Department of Mental Health and Mental Retardation, State of Texas, Wichita Falls State Hospital, and Don Gilbert, appellants, appeal the trial court's denial of their plea to the trial court's jurisdiction based on their claim of sovereign immunity. While I concur with the majority's conclusion that the patient's bill of rights failed to waive immunity for public entities, I respectfully disagree with the majority's conclusion that the appellee failed to allege facts sufficient to show waiver of immunity due to use, nonuse, or a condition of property.

I believe appellants' patient, Robin Lee, made sufficient allegations in her pleadings to establish the trial court's jurisdiction over her claim and that the trial court correctly determined the State had waived immunity.

When we review a trial court's ruling on a plea to the jurisdiction we look to the allegations in the pleadings and accept them as true.[1] Additionally, the supreme court has determined the trial court may consider evidence in a preliminary hearing in order to determine its jurisdiction.[2] If the plaintiff provides sufficient evidence or alleges sufficient facts in its petition to establish waiver of immunity, dismissal for want of jurisdiction is inappropriate.[3] Under the Texas Tort Claims Act (TTCA) a governmental unit is liable for personal injury or death caused by a "condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant

58. *See* Tex.Health & Safety Code Ann. §§ 464.001(5)(A), (G), (L), 571.003(12).

59. *See City of LaPorte*, 898 S.W.2d at 292–96; *Duhart*, 610 S.W.2d at 742–43.

60. *See* Private Psychiatric, Substance Abuse, and Medical Rehabilitation Servs. in Tex., Senate Interim Comm. on Health & Human Servs., 73rd Leg. (Nov.1992); Senate Comm. on Health & Human Servs., Bill Analysis, Tex. S.B. 205, 73rd Leg., R.S. (1993).

61. *Fernandez*, 28 S.W.3d at 6.

1. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

2. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

3. *Tex. Natural Res. & Conserv. Comm'n v. White*, 13 S.W.3d 819, 823 (Tex.App.—Fort Worth 2000, pet. granted).

according to Texas law."[4] The majority believes the State has not waived its immunity under the TTCA because the unlocked doors merely furnished a condition of the property that resulted in the patient's injury, as opposed to actually causing the injury. Because I do not believe the property's use or misuse must so directly cause the injury, I respectfully dissent from the majority's conclusion on issue one.

In response to appellants' motion for summary judgment and plea to the jurisdiction, appellee claimed that the hospital's failure to lock her door or lock the doors between the men's and women's wings constituted a misuse of personal property that falls within section 101.021's meaning of "use," that the failure to provide some locking device on her door or the doors separating the wings was negligent, and that such negligence caused appellee's damages. The question is whether the nonuse or misuse of a lock constitutes a "use" or a condition of the property that goes beyond the mere furnishing of the condition that allowed the injury to occur.

In the *Lowe v. Texas Tech University*[5] case, the supreme court held the State waived immunity when a football player was injured after a coach refused to let him wear a knee brace.[6] And in *Robinson v. Central Texas MHMR Center*,[7] the supreme court also held the State waived immunity where it allowed a handicapped young man to swim without a life preserver.[8] In both of those cases, the property used or not used led directly to the plaintiffs' injuries. According to the Texas Supreme Court, we should, however, limit the

holdings of those two cases to the type of facts presented by their claims.[9] Citing *Kerrville State Hospital v. Clark*,[10] the majority concludes that *Bossley* subsequently limited the breadth of *Robinson* and *Lowe* to claims where a plaintiff alleges a state actor has provided property that lacks an integral safety component that led to injuries.[11] I believe appellee claimed that exactly and therefore *Bossley* would not require dismissal.

Appellee's exact claim set forth in her second amended petition says it best:

The failure to close and secure and to provide locking devices for the doors segregating the dormitories or sleeping areas, as well as the failure to lock Plaintiff's room or provide her with a locking device, was a misuse of tangible personal property and real estate and was a defective condition of these properties and was a failure to provide Plaintiff with safety devices ... which proximately caused Plaintiff's damages.

The majority says this is not enough and that *Bossley* compels dismissal. I disagree. In the *Bossley* case, an involuntarily-committed suicide patient escaped through an unlocked inner door while an employee was leaving the building and briefly left the outer door unlocked as she exited.[12] Hospital staff chased Bossley about a half a mile, where Bossley tried to hitchhike rides on both sides of a freeway. As a staff member approached, Bossley committed suicide by jumping into oncoming traffic.[13] Bossley's parents sued the Dallas MHMR and other various employees claiming the State had waived immunity under section 101.021(2) of the TTCA

4. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997).

5. 540 S.W.2d 297 (Tex.1976).

6. *Id.* at 300.

7. 780 S.W.2d 169 (Tex.1989).

8. *Id.* at 171.

9. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343

(Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

10. 923 S.W.2d 582 (Tex.1996).

11. *See id.* at 585.

12. *Bossley*, 968 S.W.2d at 340–41.

13. *Id.* at 341.

because their son's death was caused by Jones's unlocking the outer door without first locking the inner door.[14] The trial court granted the State's motion for summary judgment on the ground of immunity but the appellate court reversed. However, the supreme court then reversed saying that property that does no more than furnish the condition that makes the injury possible cannot be said to have caused the injury, as required by the TTCA.[15] The court noted that both a use of property (Jones's unlocking the outer door without watching for Bossley) and a condition of the property (the unlocked inner door) did not actually cause his suicide but only provided the means of escape.[16] The supreme court continued by distinguishing the facts in Bossley's case from the facts in *Overton Memorial Hospital v. McGuire.*[17] In *McGuire*, the supreme court held that the hospital's failure to provide a hospital bed with side rails directly caused the plaintiff's injuries when he fell out of that bed.[18] In other words, "plaintiff's injury was immediate and directly related to the absence of restraints on the side of the bed," as opposed to Bossley's death, that was "distant geographically, temporally, and causally from the open doors at Hillside."[19] Appellants and the majority believe *Bossley* compels dismissal because the unlocked doors provided no more than the mere condition that allowed the rape to occur. I disagree.

When applying the factors noted by the *Bossley* court, one can only reach the conclusion that the condition of the unlocked doors provided more than just the condition that allowed the rape. The rape took place on appellants' premises, in the patient's room, in spite of appellants' knowledge regarding the patient's promiscuity and prior sexual encounters on site. In *Bossley*, the patient was killed off premis-

es, after a lengthy chase and because of Bossley's fortuitous timing (i.e., being at the front door when someone left it unlocked). Therefore, I believe *Bossley* is distinguishable from this case because the injury here was not distant temporally, geographically, or causally.

I believe the facts as alleged create a basis for establishing that the unlocked doors furnished more than just the condition for the rape; it provided access to appellee and it also provided a place for the assault to occur, all of which occurred on the hospital's property. Therefore, I would affirm the trial court's denial of appellants' motion for summary judgment on waiver of immunity under the TTCA and hold the trial court has jurisdiction to hear those claims. Alternatively, I would remand this case to the trial court to give the parties an opportunity to request a preliminary hearing on the pleas to the jurisdiction in accordance with the supreme court's guidance set forth in the *Bland* case.

---

**14.** *Id.*

**15.** *Id.* at 343.

**16.** *Id.*

**17.** 518 S.W.2d 528 (Tex.1975).

**18.** *Id.* at 529.

**19.** *Bossley*, 968 S.W.2d at 343.