TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00507-CV








Michelle Michael, Individually and as Next Friend of Vanessa Michael

and Natasha Michael, Minor Children, Appellant


v.


Travis County Housing Authority, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. 97-04165-A, HONORABLE DONALD V. HAMMOND, JUDGE PRESIDING 






 Appellant Michelle Michael, individually and on behalf of her minor children,
Vanessa Michael and Natasha Michael, sued the Travis County Housing Authority for personal
injuries based on alternative theories of strict liability, negligence, and premises liability. 
Asserting sovereign immunity, the Housing Authority filed a motion to dismiss for lack of
jurisdiction, which the trial court granted. On appeal, Michael asserts that the trial court
misconstrued the Tort Claims Act's waiver of sovereign immunity for injuries caused by a
condition or use of personal or real property. See Tex. Civ. Prac. & Rem. Code Ann.
§ 101.021(2) (West 1997). We will reverse the trial court's judgment and remand the cause.


FACTUAL AND PROCEDURAL BACKGROUND

 We determine the trial court's jurisdiction from the good-faith factual allegations
made by the plaintiff. See Brannon v. Pacific Employers Ins. Co., 224 S.W.2d 466, 469 (Tex.
1949); Flowers v. Lavaca County Appraisal Dist., 766 S.W.2d 825, 827 (Tex. App.--Corpus
Christi 1989, writ denied). Unless the defendant pleads and proves that such allegations were
fraudulently made to confer jurisdiction, they are accepted as true. See Flowers, 766 S.W.2d at
827; Delk v. City of Dallas, 560 S.W.2d 519, 520 (Tex. Civ. App.--Texarkana 1977, no writ);
Gordon v. Carver, 409 S.W.2d 878, 879 (Tex. Civ. App.--Amarillo 1966, no writ); see also
Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 449 (Tex. 1996). Because the
Housing Authority has not asserted any such fraudulent pleading here, we accept Michael's
allegations as true; our recitation of the facts is taken from her pleadings.

 On or about April 27, 1995, eight-year-old Vanessa Michael and her sister Natasha
were roller-blading near their home in Travis County when Vanessa was attacked by two "pit
bull" dogs. Vanessa suffered serious physical and emotional injuries. Natasha, who witnessed
the attack, and Vanessa's mother, Michelle Michael, who witnessed its immediate aftermath, are
also alleged to have suffered severe emotional distress.

 The owners of the dogs live in a dwelling owned and maintained by the Housing
Authority at the time of the incident. The dogs were enclosed in the yard of this residence by a
fence, but the fence had holes in it. It was this defect that allowed the dogs to escape and attack
Vanessa on the nearby sidewalk.

 Michelle Michael sued both the dogs' owners and the Housing Authority for the
personal injuries she and her daughters sustained. The Housing Authority moved for dismissal
of the claim against it for lack of subject matter jurisdiction on the ground that the Housing
Authority is immune from liability as a governmental unit. Plaintiff responded that her claims fall
within the Texas Tort Claims Act's statutory waiver of sovereign immunity for personal injury
"caused by a condition or use of tangible personal or real property if the governmental unit
would, were it a private person, be liable to the claimant according to Texas law." Civ. Prac. &
Rem. Code § 101.021(2) (emphasis added). In particular, plaintiff claimed that the attack and
resulting injuries were caused by the Housing Authority's failure to properly inspect and maintain
the fence--a condition or use of tangible personal property.

 According to Michael's pleadings, the Housing Authority was responsible for
maintaining the fence and had previously conducted an inspection of the premises that either
revealed or should have revealed its defective condition. Michael's pleadings also alleged that the
Housing Authority knew or should have known about the presence of the dogs and about their
dangerous tendencies. Despite the nature of the pit bulls and the broken fence, there were no signs
posted to warn others of the risk of danger.

 The trial court dismissed the suit against the Housing Authority for want of
jurisdiction and severed Michael's claim against the Housing Authority from that against the dogs'
owners. Michael perfected this appeal from the order of dismissal.


DISCUSSION

 In a single point of error, Michael asserts that the trial court's dismissal was
erroneous because the suit falls within the section 101.021(2) waiver of immunity and therefore
is not barred by the doctrine of sovereign immunity.

 A plea to the jurisdiction challenges the trial court's authority over the subject
matter of the controversy. Schulz v. Schulz, 726 S.W.2d 256, 257 (Tex. App.--Austin 1987, no
writ). The plaintiff bears the burden of alleging facts that affirmatively demonstrate that the trial
court has subject matter jurisdiction. Texas Ass'n of Business v. Texas Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993). Whether a trial court has subject matter jurisdiction is a question
of law, requiring a de novo review. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.
1998), pet. for cert. filed, 67 U.S.L.W. 3149 (U.S. Aug. 6, 1998) (No. 98-249).

 A housing authority is a unit of government for all purposes, including the
application of the Tort Claims Act. See Tex. Loc. Gov't Code Ann. § 392.006 (West 1999). In
Texas, a governmental unit is immune from tort liability unless the legislature has waived
immunity. See Harris County v. Dillard, 883 S.W.2d 166, 168 (Tex. 1994). Such exceptions to
sovereign immunity are generally dependent entirely on statute. See Dallas County Mental Health
& Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex.), cert. denied, 119 S. Ct. 541
(1998). The Tort Claims Act provides a waiver of immunity for personal injuries "caused by a
condition or use of tangible personal or real property." Civ. Prac. & Rem. Code § 101.021(2). 
This waiver is to be liberally construed in order to effectuate the purposes of the Texas Tort
Claims Act. Robinson v. Central Tex. MHMR Ctr., 780 S.W.2d 169, 170 (Tex. 1989). The
Texas Supreme Court has stated that in order to fulfill the requirement of liberal construction, we
must be careful not to place such a restrictive interpretation on section 101.021(2) that we require
more than what is expressed or implied in the language of the Act. See Salcedo v. El Paso Hosp.
Dist., 659 S.W.2d 30, 32 (Tex. 1983) (allegation of defective tangible property is not necessary
if use, rather than condition, of property is alleged to be "a contributing factor to the injury"). 
But we must balance this liberal construction with the legislative intent of a limited, rather than
unlimited, waiver of sovereign immunity. Bossley, 968 S.W.2d at 341.

 The supreme court has consistently construed the causation requirement in section
101.021(2) to be one of proximate cause, not a different standard such as immediate cause, direct
cause, or sole cause:


Each unit of government in the state shall be liable for money damages for death
or personal injuries so caused (i.e., when proximately caused by the negligence or
wrongful act or omission of any officer or employee acting within the scope of his
employment or office) from some condition or some use of tangible property under
circumstances where there would be private liability.


Lowe v. Texas Tech Univ., 540 S.W.2d 297, 299 (Tex. 1976) (emphasis of "proximately caused"
added); accord Bossley, 968 S.W.2d at 342 ("Section 101.021(2) requires that for immunity to
be waived, personal injury or death must be proximately caused by the condition or use of tangible
property."); Salcedo, 659 S.W.2d at 32 ("the proximate cause of the damages for death or
personal injury . . . must involve 'some condition or some use' of tangible property . . . .").

 The proper scope of the proximate cause standard has been a subject of debate since
Lowe. In Salcedo the supreme court stated that, to satisfy the Tort Claims Act, the negligent
conduct "must involve 'some condition or some use' of tangible property." 659 S.W.2d at 33
(emphasis added). In Bossley the court clarified that statement by explaining that "involvement"
of property is a necessary, but not sufficient, test for waiver of immunity. See Bossley, 968
S.W.2d at 342.

 Relying on the decision in Bossley, the Housing Authority contends immunity is
not waived in the present case, urging that the injury was caused by the dogs, not the fence, and
therefore it cannot be said that a condition or use of property proximately caused the injury. In
effect, the Housing Authority construes Bossley to require that any property causing injury must
be the device that directly inflicts the injury. We do not interpret Bossley to require such direct
contact, as long as there is a reasonably close causal relation between the property and the
resulting injury. See id. at 343 (distinguishing Overton Memorial Hospital v. McGuire, 518
S.W.2d 528, 529 (Tex. 1975), in which sovereign immunity was held to be waived for injuries
caused by patient falling out of hospital bed that was not equipped with side rails, on ground that
injury in McGuire was "immediate and directly related" to hospital bed).

 In a plurality decision, the supreme court in Texas Department of Mental Health
& Mental Retardation v. Petty ex rel. Kauffman, 848 S.W.2d 680 (Tex. 1992), explicitly rejected
the State's argument that there could be no waiver of immunity for a patient's death due to misuse
of medical tests and records unless "a large stack of them had fallen on her head." Id. at 682. 
In finding a section 101.021(2) waiver of immunity, Petty noted that in Salcedo, where a waiver
of immunity was found when a hospital's misreading of an electrocardiogram graph led to a
patient's death, the plaintiff was not required to prove direct injury from the graph itself, but from
the diagnosis contained in the record. Id. Petty also cited an appellate court's decision in
Huckabay v. Irving Hospital Foundation, 802 S.W.2d 758 (Tex. App.--Dallas 1990, writ denied),
which similarly rejected an argument that an X-ray machine must cause an injury directly rather
than through its use and noted that such constrained interpretations of section 102.021(2) are in
direct contradiction with the unanimous opinion of the court in Salcedo and of the ensuing
Robinson opinion as well. Petty, 848 S.W.2d at 682.

 The supreme court's most recent pronouncements on the subject are in Bossley. 
There, a suicidal patient escaped from a mental health treatment facility by passing through an
unlocked inner door and then pushing aside an attendant who had just opened a secure outer door. 
Facility staff members chased the patient for half a mile before they caught up with him near an
interstate freeway. The patient attempted to hitchhike a ride, first from one side of the freeway
and then from the other, before the staff members and police were able to approach him. When
his apprehension was imminent, the patient committed suicide by leaping in front of a passing
truck. The court found that this sequence of events made the patient's death "too attenuated" from
the use and condition of the inner door to satisfy the requirement of proximate cause. See Bossley,
968 S.W.2d at 343.

 In contrast to Bossley, the facts alleged in the present case show an immediate attack
by two pit bulls that escaped through a defective fence, the only barrier protecting passers-by from
the vicious dogs. The attack occurred on a nearby sidewalk in close proximity to the fence. Thus,
the record here does not show the type or degree of intervening causes, nor the attenuation and
remoteness of causation, found in Bossley. Other than the broken fence, there were no unusual
obstacles for the dogs to overcome in order to attack Vanessa. Unlike the injury in Bossley, the
injury here was not "distant geographically, temporally, and causally." See Bossley, 968 S.W.2d
at 343. Under the present facts, therefore, we conclude that Bossley does not preclude a waiver
of sovereign immunity.

 The supreme court also noted in Bossley that sovereign immunity is waived under
section 101.021(2) when a governmental unit provides property that lacks "an integral safety
component" that leads to personal injuries. Id. (citing Kerrville State Hospital v. Clark, 923
S.W.2d 582 (Tex. 1996)). On several occasions, the court has construed section 101.021(2) to
provide a waiver of immunity for injuries caused by safety-defective property. See, e.g.,
McGuire, 518 S.W.2d 528 (no immunity for hospital which provided bed without side rails,
leading to patient falling out of bed); Robinson, 780 S.W.2d 169 (no immunity for mental health
facility that failed to provide life preserver for epileptic patient who subsequently drowned while
swimming); Lowe, 540 S.W.2d 297 (no immunity for university that failed to provide proper
safety equipment to football player, which led to knee injury). As in those situations, the present
case could be construed to involve tangible property that lacked an integral safety component: a
fence meant to protect passers-by from vicious dogs, but which, because of defects, failed to serve
its basic purpose.

 Although Bossley cautioned that "[p]roperty does not cause injury if it does no more
than furnish the condition that makes the injury possible," we do not construe this minimum
standard to bar a waiver of immunity here. See Bossley, 968 S.W.2d at 343. The court in Bossley
referenced Union Pump Co. v. Allbritton, 898 S.W.2d 773, 776 (Tex. 1995), as the source of this
standard, which in turn cited Lear Siegler, Inc. v. Perez, 819 S.W.2d 470 (Tex. 1991). In both
of these cases, the court declined to find proximate cause because the causal relation between the
property and the injury was too attenuated. In Lear Siegler, an employee of the Texas Highway
Department was pulling a flashing warning sign behind a highway maintenance vehicle to warn
other vehicles of the maintenance operation. When the flashing sign malfunctioned, the employee
got out of his truck to reconnect some loosened wires. As he did so, the sleeping driver of an
oncoming vehicle struck the sign, which in turn struck the employee. The malfunctioning flashing
light was found too remote from the plaintiff's subsequent injuries. In Union Pump, an employee
of a chemical plant suffered injury when the employee attempted to block off a nitrogen valve after
quenching a plant fire caused by a pump manufactured by Union Pump. After containing the fire,
two employees of the chemical plant made their way to a nitrogen valve in order to block it off. 
When they returned from the valve location along one of several alternate paths, one of the
employees slipped and fell off a pipe rack that was allegedly wet from fire-extinguishing liquids. 
Again, the court found that the plaintiff's injuries were too attenuated from the property (the
pump). Moreover, in each of these cases there were other events that transpired between the
alleged cause and the injury, making the causal nexus too remote.

 In the present case, the broken fence did more than merely furnish the condition that
made the injury possible in the manner of Union Pump, Lear Siegler, or Bossley. Providing a
fence with holes in it to enclose dogs with vicious tendencies is more comparable to providing a
hospital bed without side rails or allowing an epileptic patient to swim without a life preserver than
to the attenuated circumstances of the referenced trio of cases.

 We recognize that an arguably contrary result was recently reached in San Antonio
State Hospital v. Koehler, 981 S.W.2d 32 (Tex. App.--San Antonio 1998, pet. denied), in which
a state hospital was found not to be within the waiver of section 101.021(2) where a fence
enclosing the hospital grounds had gaps in it that permitted a mental patient's escape. The patient
escaped the hospital grounds, accompanied by a male acquaintance, through a hole in the fence
surrounding the property. The patient left voluntarily with her male companion to a boarding
house, where he raped her. This intervening criminal act of a third party further attenuated the
causal nexus between the property and the injury. Indeed, the court in Koehler acknowledged that
the injury there was even further removed from the property's condition than in Bossley. Id. at
36. We believe the injury suffered by the plaintiff in Koehler is substantially more remote
geographically, temporally, and causally than that sustained by Vanessa in the pit bull attack here.

 Moreover, one of the Koehler court's conclusions appears to be an unwarranted
expansion of the Bossley holdings. Koehler interpreted Bossley to require that a premise condition
"must actually be the instrumentality that causes the plaintiff's harm." Koehler, 981 S.W.2d at
37. We fail to find such a sweeping conclusion in Bossley, which required only that property must
do "more than furnish the condition that makes injury possible" for a waiver of sovereign
immunity. See Bossley, 968 S.W.2d at 343. Beyond finding the circumstances surrounding the
patient's injuries too attenuated geographically, temporally, and causally from the use of the doors,
Bossley did not adopt the extreme standard that the Koehler court perceives. In the present
context, therefore, we do not find Koehler persuasive.


CONCLUSION

 Because we conclude that the facts of the present case satisfy the requirements for
causation within section 102.021(2), we reverse the trial court's dismissal and remand the cause
to that court for further proceedings.



 
 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Reversed and Remanded

Filed: June 30, 1999

Publish



Highway
Department was pulling a flashing warning sign behind a highway maintenance vehicle to warn
other vehicles of the maintenance operation. When the flashing sign malfunctioned, the employee
got out of his truck to reconnect some loosened wires. As he did so, the sleeping driver of an
oncoming vehicle struck the sign, which in turn struck the employee. The malfunctioning flashing
light was found too remote from the plaintiff's subsequent injuries. In Union Pump, an employee
of a chemical plant suffered injury when the employee attempted to block off a nitrogen valve after
quenching a plant fire caused by a pump manufactured by Union Pump. After containing the fire,
two employees of the chemical plant made their way to a nitrogen valve in order to block it off. 
When they returned from the valve location along one of several alternate paths, one of the
employees slipped and fell off a pipe rack that was allegedly wet from fire-extinguishing liquids. 
Again, the court found that the plaintiff's injuries were too attenuated from the property (the
pump). Moreover, in each of these cases there were other events that transpired between the
alleged cause and the injury, making the causal nexus too remote.

 In the present case, the broken fence did more than merely furnish the condition that
made the injury possible in the manner of Union Pump, Lear Siegler, or Bossley. Providing a
fence with holes in it to enclose dogs with vicious tendencies is more comparable to providing a
hospital bed without side rails or allowing an epileptic patient to swim without a life preserver than
to the attenuated circumstances of the referenced trio of cases.

 We recognize that an arguably contrary result was recently reached in San Antonio
State Hospital v. Koehler, 981 S.W.2d 32 (Tex. App.--San Antonio 1998, pet. denied), in which
a state hospital was found not to be within the waiver of section 101.021(2) where a fence
enclosing the hospital grounds had gaps in it that permitted a mental patient's escape. The patient
escaped the hospital grounds, accompanied by a male acquaintance, through a hole in the fence
surrounding the property. The patient left voluntarily with her male companion to a boarding
house, where he raped her. This intervening criminal act of a third party further attenuated the
causal nexus between the property