COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

TEXAS TECH UNIVERSITY HEALTH              )

SCIENCES CENTER,                                          )

                                                                              )           
No.  08-01-00061-CV

Appellant,                          )

                                                                              )                 Appeal from the

v.                                                                           )

                                                                              )         
County Court at Law #5

JESUS ROBERTO MENDOZA,
Individually        )

and as Temporary Guardian of
the Estate of            )          
of El Paso County, Texas

ALICIA MENDOZA, and JESUS
ROBERTO      )

MENDOZA, JR., and ROSA
MENDOZA,           )                   (TC# 97-4194)

                                                                              )

Appellees.                          )

 

 

MEMORANDUM   OPINION

 

This is an
interlocutory appeal of the trial court=s
denial of Appellant=s plea to
jurisdiction.  Jesus Roberto Mendoza,
individually and as temporary guardian of the estate of Alicia Mendoza, Jesus
Roberto Mendoza, Jr., and Rosa Mendoza, (Athe
Mendozas@) brought
suit against the Texas Tech University Health Sciences Center (ATTUHSC@)
under the Texas Tort Claims Act, alleging medical negligence.  TTUHSC filed a plea to the jurisdiction
asserting sovereign immunity.  The trial
court denied the motion in favor of the plaintiffs.  TTUHSC now appeals the lower court=s decision.  We will affirm.








BACKGROUND

In December of
1995, Alicia Mendoza was hospitalized and surgery was performed at R.E.
Thomason Hospital.  A day after the
surgery, Mrs. Mendoza suffered a pulmonary embolism and collapsed.  She fell into a coma, never recovered, and
died on July 24, 1997.  Alicia Mendoza=s husband and children brought suit
against the hospital and Texas Tech University Health Sciences Center.  The trial court dismissed the claim against
the hospital upon a motion for partial nonsuit. 
TTUHSC filed a motion to dismiss for lack of jurisdiction based on
sovereign immunity.  The trial court denied
the motion.  TTUHSC now appeals the
denial.  

The Mendozas
contend Mrs. Mendoza died as a result of the negligence of her treating
physician, Dr. Emmitt McGuire.  In
particular, they argue that improper medical treatment caused her to suffer a
pulmonary embolism.  Further, they
maintain their claim falls within a waiver under the Tort Claims Act ' 101.021(2).  Specifically, Appellees argue the use of six
different tangible items by the treating physician and staff proximately caused
the death of Alicia Mendoza.  The
tangible property at issue includes an EKG machine[1],
walker, heart monitor, fluid machine, surgical tools, and radiological
equipment.          

STANDARD
OF REVIEW








A plea to the
jurisdiction is a dilatory plea by which a party challenges the trial court=s authority to determine the subject
matter of the cause of action.  See
Texas Dept. of Transportation v. Jones, 8 S.W.3d 636, 637-38 (Tex. 1999); City
of Midland v. Sullivan, 33 S.W.3d 1, 6 (Tex.App.--El Paso 2000, pet. dism=d w.o.j.).  The plaintiff has the burden to allege facts
positively establishing the trial court has subject matter jurisdiction.  Id.; Texas Ass=n of Bus. v. Texas Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).  To sue
the State for a tort, the pleadings must state a claim under the Tort Claims
Act.  Jones, 8 S.W.3d at 639.  However, where sovereign immunity is at
issue, mere reference to the Act does not demonstrate the state=s consent to be sued, nor confer
jurisdiction on the trial court.  Texas
Department of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001).








A trial court=s ruling on a plea to jurisdiction is
subject to de novo review on appeal. 
City of Midland, 33 S.W.3d at 6-7; Herring v. Welborn, 27
S.W.3d 132, 136 (Tex.App.--San Antonio 2000, pet. denied).  The appellate court may consider a plaintiff=s pleadings, assertions of fact, and
any evidence submitted by the parties relevant to the jurisdictional
issue.  Miller, 51 S.W.3d at 587; Jones,
8 S.W.3d at 639.  Pleadings are construed
liberally in the plaintiff=s
favor and with an eye to the plaintiff=s
intent.  Texas Department of
Transportation v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002); Texas Ass=n of Bus., 852 S.W.2d at 446.  Moreover, we take the facts as plead to be
true unless the defendant pleads and proves the allegations were fraudulently
made in order to confer jurisdiction.  Cont=l Coffee Prods. Co. v. Cazarez, 937
S.W.2d 444, 449 (Tex. 1996).[2]  The reviewing court should not address the
merits of the case.  Bland Indep. Sch.
Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); Batson v. City of Port
Isabel, 49 S.W.3d 425, 427-28 (Tex.App.--Corpus Christi 2001, pet.
denied).  Instead, this Court must decide
whether the facts as alleged support jurisdiction in the trial court.  University of Tex. Med. Branch at
Galveston v. Hohman, 6 S.W.3d 767, 771 (Tex.App.--Houston [1st Dist.] 1999,
pet. dism=d
w.o.j.).

Because a waiver
of sovereign immunity under the Tort Claims Act is limited, we begin our review
by looking to the terms of the Act to determine the scope of its waiver.  Dallas County Mental Health & Mental
Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998), cert. denied,
525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); Kerrville State Hosp.
v. Clark, 923 S.W.2d 582, 584 (Tex. 1996). 
We then consider the individual facts of the case before us to determine
whether it comes within that scope.  Miller,
51 S.W.3d at 587.

TORT
CLAIMS ACT

The Texas Tort
Claims Act provides a limited waiver of sovereign immunity under certain
narrowly defined circumstances.  Miller, 51 S.W.3d at 587.  Negligence claims are cognizable under the
Act.  See University of Texas Medical
Branch at Galveston v. York, 871 S.W.2d 175, 176 (Tex. 1994).  The statute allows for government liability
in three general areas: use of publicly owned automobiles, premises defects,
and injuries arising out of conditions or use of property.  Tex.Civ.Prac.&Rem.Code Ann. ' 101.021 (Vernon 1997); Texas Dept.
of Transp. v. Able, 35 S.W.3d 608, 611 (Tex. 2000).  In the present case, the Mendozas allege a
waiver of sovereign immunity under the third area.  A waiver under this section of the Act
applies to both governmental liability and immunity from suit.  Tex.Civ.Prac.&Rem.Code
Ann. '
101.025(a);  Miller, 51 S.W.3d at
587.

The applicable
provision states:

A governmental unit in the state is
liable for:

 

                                                              .               .               .

 








(2)        personal injury and death so caused by a
condition or use of tangible personal or real property if the governmental unit
would, were it a private person, be liable to the claimant according to Texas
law.

 

Tex.Civ.Prac.&Rem.Code
Ann. '
101.021(2).  To properly state a claim
involving a use of nondefective property, as we have here, a plaintiff must
allege the property was used or misused by a government employee.  Lacy v. Rusk State Hosp., 31 S.W.3d
625, 629 (Tex.App.--Tyler 2000, no pet.). 
In the context of this provision, Ause@ means Ato
put or bring into action or service; to employ for or apply to a given purpose.@ 
Texas Natural Resource & Conservation Comm=n v. White, 46 S.W.3d 864, 869
(Tex. 2001), citing Mount Pleasant Indep. School Dist. v. Estate of Lindburg,
766 S.W.2d 208, 211 (Tex. 1989); Borrego v. City of El Paso, 964 S.W.2d
954, 957 (Tex.App.--El Paso 1998, pet. denied). 
At a hearing on a plea to the jurisdiction, the Mendozas need not prove
Dr. McGuire=s actions
constituted a use of tangible personal property for this Court to affirm the
trial court=s
order.  See Austin Indep. Sch. Dist.
v. Gutierrez, 54 S.W.3d 860, 863 (Tex.App.--Austin 2001, pet. denied).  Rather, the burden of proof is on the
government to establish that the doctor=s
actions did not constitute a use of tangible property.  See id.








Mere involvement
of tangible property in personal injury or death is not enough alone to waive
liability.  Bossley, 968 S.W.2d at
342-43.  A plaintiff must also
demonstrate causation.  Tex.Civ.Prac.&Rem.Code Ann. ' 101.021(2).  To establish causation under Section
101.021(2), the use of property must do more than furnish the condition that
makes the injury possible.  Id. at
343; City of San Antonio v. Hernandez, 53 S.W.3d 404, 409 (Tex.App.--San
Antonio 2001, pet. denied).  To prevail
at trial, a plaintiff must prove the injury was proximately caused by the use
of property.  See Bossley, 968
S.W.2d at 343; City of Midland, 33 S.W.3d at 7.  In other words, a plaintiff must show the
tangible property to be the instrumentality of harm.  Bossley, 968 at 342; Batson, 49
S.W.3d at 429 n.4.

ANALYSIS

TTUHSC argues a
waiver of sovereign immunity has not been established in this case.  In order to demonstrate a waiver of immunity
under Section 101.021, plaintiffs must allege (1) a use of tangible personal
property by a governmental unit, (2) that causes personal injury or death.  Tex.Civ.Prac.&Rem.Code
Ann. '
101.021(2).  We will address each of
these requirements separately.

Use
of Tangible Property

TTUHSC contends
the Mendozas have failed to show a use of tangible property by Dr. McGuire
sufficient to trigger an abdication of immunity under the Act.  Specifically, TTUHSC characterizes use of
certain property[3]
as incidental, and therefore outside the scope of the statutory waiver.  The gravamen of their argument is that the
Mendozas=
complaints with regard to use of the walker, fluid machine, and surgical
instruments are no different than those dismissed by the Miller Court as
non-uses of property, not waiving immunity under the Act.  








As the Supreme
Court noted in Miller, cases involving a failure to use or non-use of
property do not waive sovereign immunity. 
Miller, 51 S.W.3d at 587-88, citing as an example, Kerrville
State Hosp. v. Clark, 923 S.W.2d 582, 584 (Tex. 1996).  In contrast, cases involving use or misuse of
property do effect a waiver.  Miller,
51 S.W.3d at 587-88, citing as an example, Lowe v. Texas Tech Univ.,
540 S.W.2d 297, 300 (Tex. 1976).  An
examination of the Mendozas=
pleadings reveals they have alleged injury caused by the use and/or misuse of
property in the form of a walker, fluid machine, and surgical tools.  Each of these items were used in the
treatment of Alicia Mendoza.  Further,
the use of the items is alleged to have caused the injuries sustained by Mrs.
Mendoza.  These facts are quite different
than those considered by the Miller Court.  In Miller, the plaintiffs complained
the property used to treat the patient masked the symptoms of a life
threatening condition.  Miller, 51
S.W.3d at 588.  There was no allegation
the property used actually caused injury or death.  Id. 
The importance of the Miller decision as it relates to the case sub
judice, is the Court=s
discussion of the causation requirement under Section 101.021.  The holding in Miller did not alter
the definition of Ause,@ set forth a new standard, or create an
exclusive list of property, that when used, somehow automatically falls within
or out of the Act.  We find nothing in Miller
to suggest the use of property in this case, if shown to have caused the injury
complained-of, would not otherwise trigger a waiver under the Tort Claims
Act.  As such, we find TTUHSC=s characterization of this case as one
involving the non-use of property to be erroneous.








The Mendozas= pleadings clearly allege injury to
Alicia Mendoza by the use or misuse of several items of tangible property.  Miller, 51 S.W.3d at 587 (holding that
a plaintiff must plead facts which fall within the scope of the waiver relied
upon); Cf. University of Texas Medical Branch at Galveston v. Wood, 2002
WL 31890102, at *2-3 (Tex.App.--Houston [14th Dist.] December 31, 2002, no pet.
h.)(not designated for publication)(where the court finds the plaintiff
adequately invoked the applicable provision of the Tort Claims Act by alleging
negligence in the use equipment and facilities in its pleadings and giving only
slightly more detail at the hearing on the plea to the jurisdiction); Snelling
v. Mims, 2002 WL 31926364, at *5-6 (Tex.App.--Waco December 31, 2002, no
pet. h.)(not designated for publication)(where the court reviewed plaintiff=s petition, noted the pleadings did not
allege a condition or use of tangible personal or real property, and concluded
there was no waiver of sovereign immunity). 
The pleadings unambiguously state the use of the property by Dr.
McGuire, a government employee, caused the injury.  Bossley, 968 S.W.2d at 343; Lacy,
31 S.W.3d at 629; City of Midland, 33 S.W.3d at 7.  Accordingly, the Mendozas have met the first
requirement under Section 101.021 by clearly showing a use or misuse of
property is at issue in this case.  Tex.Civ.Prac.&Rem.Code Ann. ' 101.021(2).

Proximate
causation

The second
condition that must be shown by the Mendozas in order to effect a waiver under
the Tort Claims Act is that the property used proximately caused Mrs. Mendoza=s injury.  Tex.Civ.Prac.&Rem.Code
Ann. '
101.021(2); Bossley, 968 S.W.2d at 341-42.  AProximate
cause consists of both cause in fact and foreseeability.@  City of Midland, 33 S.W.3d at 7, citing
Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995) and Travis
v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992).  Here, Acause
in fact@ means
Dr. McGuire=s use of
the property was a substantial factor in bringing about the injury.  See City of Midland, 33 S.W.3d at 7-8;
San Antonio State Hospital v. Koehler, 981 S.W.2d 32, 35 (Tex.App.--San
Antonio 1998, pet. denied).

TTUHSC argues
proximate causation cannot be established by the facts alleged by the
Mendozas.  To support this assertion,
TTUHSC relies upon the Court=s
decision in Miller.  We now
consider the facts related to each item of property alleged to have caused
injury to Mrs. Mendoza in light of recent case law.








Alicia Mendoza
suffered a pulmonary embolism the day after surgery while using a walker under
the instruction of Dr. McGuire.  The
Mendozas contend the use of the walker caused excessive stress on her heart,
which in turn caused the pulmonary embolism. 
TTUHSC argues the use of the walker merely furnished the condition that
made Mrs. Mendoza=s injury
possible.  As such, Appellant
characterizes the use of the walker as incidental and argues this case is
analogous to Bossely.

In Bossley,
the plaintiff alleged hospital personnel left a door unlocked, allowing a
patient to escape.  Bossley, 968
S.W.2d at 343.  After escaping, the
patient fatally threw himself in front of an oncoming truck as he was about to
be apprehended.  Id.  The Court held that based on these
allegations, the State had not waived its immunity.  Id. 
It reasoned, A[a]lthough
[the patient=s] escape
through the unlocked doors was part of a sequence of events that ended in his
suicide, the use and condition of the doors were too attenuated from [the
patient=s] death
to be said to have caused it.@  Id.

Here, Mrs. Mendoza=s collapse occurred while she was
actually using the prescribed walker. 
Its use hardly seems incidental to the pulmonary embolism, rather the
use of the walker appears to be a substantial factor in bringing about the
injury.  Bossely, 968 S.W.2d at
343; Koehler, 981 S.W.2d at 35. 
The use of the walker was not too attenuated from the injury, but rather
contemporaneous with it.  Bossley,
968 S.W.2d at 343. 








The Mendozas also
allege that following surgery, Mrs. Mendoza was treated with equipment that
provided fluids to her body.  As a
result, she received an overload of fluids, which caused swelling and led to
the pulmonary embolism.[4]  TTUHSC argues that though fluids caused the
swelling, the use of equipment that supplied the excess fluids was merely
incidental.  This logic is simply
unworkable.  The hospital administered
the overload of fluids to Mrs. Mendoza by use of special equipment.  Without use of such equipment, she would not
have received the fluids.  The mechanism
delivering the fluids and the fluids themselves cannot be distinguished in this
context.  Unlike the unlocked door in Bossley,
the fluids machine here was not incidental to the injury, but rather a cause of
the patient=s
death.  Miller, 51 S.W.3d at 588; Compare
Bossley, 968 S.W.2d at 342-43.








Alicia Mendoza was
also subjected to an unplanned gall bladder procedure during her scheduled
surgery which prolonged both the surgery and the inactivity that followed.[5]  TTUHSC contends this procedure was an event Atoo far upstream from the eventual . .
. cause of death@ and
again relies on Bossley.  However,
the Appellant fails to address the fact that the pulmonary embolism occurred
the day following the additional procedure. 
We find the facts here to be more analogous to those in Overton Mem=l Hosp. v. McGuire, 518 S.W.2d 528
(Tex. 1975).  In McGuire, the
Supreme Court held immunity was waived under Section 101.021(2) when a patient
was injured after falling out of his hospital bed.  McGuire, 518 S.W.2d at 529.  The bed was not equipped with side rails and
the Court found the plaintiff=s
injury to be immediately and directly related to the absence of restraints.  Id. 
Like the patient in McGuire, Mrs. Mendoza=s
pulmonary embolism was directly related to the additional surgical
procedure.  Furthermore, the pulmonary
embolism occurred while she was still in the hospital and within hours of the
gall bladder operation.  Accordingly, we
do not find the use of the surgical instruments in the operation to be
temporally and causally distant from the pulmonary embolism.  McGuire, 518 S.W.2d at 529; Bossley,
968 S.W.2d at 343; Texas Dept. of Mental Health and Mental Retardation v.
Lee, 38 S.W.3d 862, 868-69 (Tex.App.--Fort Worth 2001, pet. filed).

Because we believe
the facts in this case are distinguishable from those in Miller, we do
not conclude the trial court is required to grant a plea to the
jurisdiction.  In Miller, the
Court concluded a doctor=s
improper diagnosis and subsequent treatment did not actually cause a patient=s death.  Miller, 51 S.W.3d at 588.  But, in its analysis, the Court relied upon
the fact that Aneither
the drugs nor the treatment afforded to Miller hurt him or made him worse, in
and of themselves.@  Id. 
This is not true in the present case. 
Arguably, Alicia Mendoza was harmed by the doctor=s
actions.  Rather than masking symptoms
through improper treatment, here the objects used by Appellees on Mrs. Mendoza
actually caused injury in the form of swelling, delayed healing, stress on her
body, and ultimately a pulmonary embolism. 
Certainly, it is plausible the use of the walker, the fluids equipment,
and the surgical tools were each individually and in combination substantial
factors in Mrs. Mendoza=s
pulmonary embolism.  Id.








Upon consideration
of the Mendozas=
pleadings, assertions of fact and evidence presented, we hold the trial court=s denial of TTUHSC=s plea to the jurisdiction to be
proper.  We find Appellees properly
stated a claim under the Tort Claims Act. 
Miller, 51 S.W.3d at 586; Jones, 8 S.W.3d 639.  TTUHSC failed to establish Dr. McGuire=s actions did not constitute a use of
tangible property.  Gutierrez, 54
S.W.3d at 863.  Appellant=s issue is denied and the trial court=s order is affirmed.[6]

 

March 20, 2003

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.











[1] An electrocardiogram is A[a] record of the electrical activity
of the heart.  . . .  The electrocardiogram gives important
information concerning the spread of excitation to the different chambers of
the heart and it is of value in the diagnosis of cases of abnormal cardiac
rhythm and myocardial damage.@  Clayton L. Thomas, Taber=s Cyclopedic
Medical Dictionary,
457 (14th Ed. 1981).





[2] Here, Appellant has not asserted the
Mendozas made any fraudulent allegations for the purpose of conferring
jurisdiction.  See Cazarez, 937
S.W.2d at 449.  





[3] This argument is related only to the
use of the walker, the fluid machine, and the surgical instruments.





[4] Plaintiffs assert and TTUHSC does not
contest that swelling is a known risk factor for embolism.  





[5] Appellees assert and Appellant does
not contest that prolonged anesthesia, prolonged surgery, and prolonged
inactivity are all high risk factors for pulmonary embolism.  





[6] Because we find adequate support for
the trial court=s
action based on the hospital=s
use of the walker, fluid equipment, and surgical instruments, we do not address
TTUHSC=s
arguments related to the other pieces of property alleged by the Mendozas to
have caused the pulmonary embolism.