

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00879-CV

**IN THE INTEREST OF A.G.B.**, G.A.B., and J.M.B.

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA01692
Honorable Aaron Haas, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:        Luz Elena D. Chapa, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: June 14, 2023

AFFIRMED; MOTION TO WITHDRAW GRANTED; REMANDED FOR APPOINTMENT
OF NEW COUNSEL

Appellants M.B. (Mother) and A.B. (Father) are the parents of A.G.B. (born 2008), G.A.B. (born 2010), and J.M.B. (born 2017).[1] Mother challenges portions of the trial court's order that terminate her parental rights to her children. Father challenges portions of the trial court's order that: (1) appoint the Texas Department of Family and Protective Services as managing conservator of the children and Father as possessory conservator; (2) limit Father's possession of and access to the children; and (3) order Father to pay child support. We affirm the trial court's order, grant Mother's appointed appellate counsel's motion to withdraw, and remand the cause for the appointment of new appellate counsel for Mother.

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their foster mother and initials or pseudonyms to refer to their biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

**BACKGROUND**

In August of 2020, the Department removed the three children from their parents' possession because Father reported that Mother and her then-paramour left the children alone overnight in a home with no running water, food, telephone, or diapers. The Department also learned that Mother had alleged Father committed domestic violence against her. When the Department removed the children, Mother and Father were married but did not live together. During this case, Father was indicted in connection with Mother's allegation of domestic violence.

The Department obtained temporary managing conservatorship over the children; placed J.M.B. in a foster home; placed A.G.B. and G.A.B. into a group home and then into foster homes; and filed a petition to terminate Mother's and Father's parental rights. The Department created a family service plan for Mother that required her to engage in parenting classes, domestic violence classes for victims, drug treatment, random drug testing, and individual therapy. The service plan the Department created for Father required him to engage in parenting classes, domestic violence classes for perpetrators, drug testing, and individual therapy.

In October of 2021, the Department returned the children to Father. In March of 2022, the Department again removed the children because it received a report that Mother's daughter (and Father's stepdaughter), S.B., made an outcry that Father had sexually abused her when the family lived in Colorado.[2] After it re-removed the children, the Department placed all three children in the same foster home that previously cared for J.M.B.

The Department ultimately pursued termination of Mother's parental rights, but not Father's. The Department sought to be appointed the children's sole managing conservator and recommended that Father be named possessory conservator until the pending domestic violence

---

[2] S.B.'s outcry involved an allegation that she initially made in 2006 and renewed during a 2022 forensic interview. The record appears to show S.B. remained in Colorado and never lived with Mother or Father in Texas.

indictment was resolved. Mother and Father both filed cross-claims seeking termination of the other parent's rights.

In October of 2022, the trial court held a three-day jury trial. The jury heard testimony from fifteen witnesses, including Father, A.G.B., and the children's foster mother, S.C. At the conclusion of trial, the jury found by clear and convincing evidence that Mother had engaged in conduct described in Texas Family Code section 161.001(b)(1)(D), (E), (O), and (P) and that termination of her parental rights was in the children's best interest. The jury did not find by clear and convincing evidence that Father had engaged in any conduct described by Texas Family Code section 161.001(b)(1), nor did it find that termination of his parental rights would be in the children's best interest. It found, however, that the Department should be appointed sole managing conservator of the children.

On December 19, 2022, the trial court signed a final order that terminated Mother's parental rights, appointed the Department sole managing conservator of the children, and appointed Father possessory conservator. The trial court granted Father two hours of weekly supervised visits with A.G.B. and G.A.B. but ordered that he was to have "no contact with [J.M.B.] until [the Department] approves the contact." The trial court also ordered Father to pay child support. Mother and Father now separately appeal.

**ANALYSIS**

***Mother's Appeal***

Mother's court-appointed appellate counsel filed a motion to withdraw and a brief containing a professional evaluation of the record, concluding there are no arguable grounds for reversal of the termination order. The brief satisfies the requirements of *Anders v. California*, 386 U.S. 738 (1967). *See In re P.M.*, 520 S.W.3d 24, 27 n.10 (Tex. 2016) (per curiam) (recognizing that *Anders* procedures apply in parental termination cases). Additionally, counsel represents that

she provided Mother with a copy of the brief and the motion to withdraw, advised Mother of her right to review the record and file her own brief, informed Mother how to obtain a copy of the record, and provided her with a form motion for access to the appellate record. We issued an order setting a deadline for Mother to file a pro se brief. However, Mother did not request the appellate record or file a pro se brief.

After reviewing the appellate record and appointed counsel's brief, we conclude no non-frivolous grounds exist for reversal of the termination order. Accordingly, we affirm the trial court's order terminating Mother's parental rights.

"In a suit filed by a governmental entity . . . in which termination of the parent-child relationship or the appointment of a conservator for a child is requested . . . an indigent parent of the child who responds in opposition to the termination or appointment" is entitled to court-appointed counsel. TEX. FAM. CODE ANN. § 107.013(a)(1). Appointed counsel's duty to her client extends through exhaustion or waiver of all appeals, "including the filing of a petition for review" in the Texas Supreme Court. *In re P.M.*, 520 S.W.3d at 27. Accordingly, we may only permit appointed counsel to withdraw upon a showing of good cause. *Id.* at 27 n.7 (citing TEX. R. CIV. P. 10).

Here, appointed counsel's motion to withdraw states she is unable to continue as counsel of record for Mother because she "has accepted a position with the Hays County District Attorney's office." This explanation constitutes good cause for withdrawal, and we grant counsel's motion. Because we "have a duty to see that withdrawal of counsel will not result in foreseeable prejudice to" Mother, we remand this matter to the trial court with instructions to appoint new appellate counsel for Mother. *See id.* Once appointed, Mother's new counsel may satisfy his or her duty to Mother "by filing a petition for review [in the Texas Supreme Court] that satisfies the standards for an *Anders* brief." *Id.* at 27–28.

### *Father's Appeal*

### *Conservatorship*

In his first issue, Father argues the trial court's conservatorship ruling must be reversed because the evidence is legally and factually insufficient to support the jury's finding that the Department should be appointed the children's sole managing conservator.

### *Standard of Review and Applicable Law*

Because the trial court did not order termination of Father's parental rights, the Texas Family Code required it to "render any order in the best interest of the child." TEX. FAM. CODE ANN. § 161.205. The appointment of the child's parent as managing conservator is presumed to be in the child's best interest. *See, e.g.*, *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). This presumption is codified in section 153.131(a) of the Texas Family Code, which provides that "a parent shall be appointed sole managing conservator" of a child "unless the court finds that appointment of the parent . . . would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development[.]" TEX. FAM. CODE ANN. § 153.131(a). "This statute thus requires the nonparent to offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990).

In contrast with an order terminating parental rights, which "must be supported by clear and convincing evidence," a finding that the parent's appointment "as managing conservator would significantly impair the child's physical health or emotional development is governed by a preponderance-of-the-evidence standard." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). We review a trial court's conservatorship rulings for abuse of discretion. *See id.* A trial court has broad discretion in determining conservatorship, and it "does not abuse its discretion if there is some

evidence of a substantive and probative character to support its decision." *In re J.J.R.S.*, 607 S.W.3d 400, 404 (Tex. App.—San Antonio Feb. 12, 2020), *aff'd*, 627 S.W.3d 211 (Tex. 2021) (internal quotation marks omitted). In family law cases, the legal and factual sufficiency of the evidence is one factor in determining whether the trial court abused its discretion, but it is not an independent ground of error. *See, e.g.*, *In re Guardianship of C.E.M.-K.*, 341 S.W.3d 68, 80 (Tex. App.—San Antonio 2011, pet. denied).

Under an abuse of discretion standard, we engage "in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). An appellant who challenges the legal sufficiency of a finding on which he did not bear the burden of proof must show that no evidence supports the finding. *Id.* at 588. In a factual sufficiency challenge, the appellant must show the finding "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Id.* at 588–89.

*Application*

A.     Evidence presented at trial

       1.     Parental presumption

The jury heard ample evidence that Father loved his children very much and had completed all the tasks required by his service plan. Department caseworker Dietra Marquez testified that she believed Father had addressed the Department's concerns and would be able to meet the children's physical and emotional needs. Marquez and the children's foster mother, S.C., both testified that they believed Father could provide the children with a safe and stable home. Additionally, fourteen-year-old A.G.B. testified that he loved Father and wanted to live with him.

The jury also heard evidence, however, that Father had been indicted based on Mother's allegations of domestic violence. Mother's therapist testified that she had seen a video of Father hitting Mother, and Father himself testified the events that led to his indictment occurred after he let Mother into his home and then had to physically remove her while the children were present. Additionally, the jury heard evidence that A.G.B. was "parentified" when he came into care because "[h]e was the one that took care of" his two younger brothers prior to their removal.

Marquez testified the Department wanted the jury to find that it, not Father, should be appointed as the children's managing conservator. She testified the Department made this request because at the time of the trial in this case, Father had not yet been tried for the pending domestic violence charges.[3] The jury heard evidence that because Father is not a United States citizen, a conviction in the domestic violence case could result in his deportation to Germany. Marquez testified the charges would "[h]opefully" be resolved in January of 2023, but she added that she had "no assurance as to that, it's been reset multiple times."

A.G.B. testified that he was worried about what would happen to him and his brothers if Father were incarcerated or deported. He explained that he wanted to stay in his current foster home until Father's criminal charges were resolved. A.G.B. told the jury:

> I really wished that I was able to be with my dad. And I, for now, would want to be with the [children's current foster family]. . . . I want to be with my dad. But yes, as of now—as of the charges that could happen, I want to be with the [children's current foster family]. . . . [I]f my dad was to get charged[4] or if he was to get deported, I would end up some random place in the—in foster care. Like, I wouldn't be able to go back with the people I am now, and I'm really lucky to have them. That's the only reason is because I know that if I go back with my dad now, he gets, you know, charged or deported, I will not be able to go back with him and I will

---

[3] The Colorado sexual abuse allegations against Father also remained unresolved at the time of trial. A Department caseworker testified that her understanding of the status of the investigation was "there's not enough evidence to charge" Father in that case but he remained the "prime suspect." Father vehemently denied the allegations during his testimony in this case.

[4] It is undisputed that Father was indicted on the domestic violence allegations. A.G.B.'s testimony appeared to be focused on what might happen if Father were convicted.

have to find more people that I don't know. And I don't know what's going to happen to me if that happens.

A.G.B. testified that he believed twelve-year-old G.A.B. felt the same way.[5] Similarly, Marquez and S.C. both testified that A.G.B. and G.A.B. had told them they wanted to be reunited with Father but also wanted to remain with their current foster parents until Father's criminal case was resolved. S.C. further testified that A.G.B.'s and G.A.B.'s previous experience in a group home "was a very scary traumatic time for them" and that the boys did not want to return to a group home.

S.C. also confirmed that A.G.B.'s fear of potentially "end[ing] up some random place" if Father were convicted was not unfounded. S.C. testified that if the Department were appointed as sole managing conservator, the children could remain with her family until the resolution of Father's criminal charges. She explained, however, that if the children were returned to Father and he was later incarcerated or deported, then she and her husband might not be able to take the children back into their home at that time.

Based on this evidence, the jury could have rationally concluded that appointing Father as the children's sole managing conservator while his criminal charges were still pending would significantly impair the children's physical health or emotional development. TEX. FAM. CODE § 153.131(a); *Zeifman*, 212 S.W.3d at 588. Additionally, the jury's finding was not so contrary to the overwhelming weight of the evidence as to be clearly wrong. *Zeifman*, 212 S.W.3d at 588–89. Because some evidence of a probative and substantive character supported the jury's finding on this issue, the trial court did not abuse its discretion by: (1) concluding the Department overcame the parental presumption; and (2) refusing to appoint Father as the children's sole managing

---

[5] Neither G.A.B. nor four-year-old J.M.B. testified at trial. The jury heard testimony that J.M.B. was too young to express his desires about conservatorship.

conservator. *See* TEX. FAM. CODE § 153.131; *see also, e.g.*, *In re J.S.G.*, No. 14-08-00754-CV, 2009 WL 1311986, at *12 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.).

### 2. Department as managing conservator

In addition to his argument that the Department failed to overcome the parental presumption, Father contends the trial court abused its discretion by appointing the Department as the children's managing conservator because the jury did not make all the necessary findings to support that appointment. Where, as here, a trial court does not terminate the parent's rights, it may not appoint the Department as managing conservator unless it finds the Department has overcome the parental presumption *and* "it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator." TEX. FAM. CODE ANN. § 263.404(a).

The court's charge asked the jury to determine whether the Department should be appointed sole managing conservator, and the jury answered "yes" as to all three children. While the court's charge instructed the jury to consider the first prong of section 263.404(a)—the parental presumption—it did not include an instruction regarding the second prong. Father argues this omission requires us to reverse the trial court's conservatorship ruling.

We disagree. "Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." TEX. R. CIV. P. 278. The record does not show that Father requested the omitted instruction. Accordingly, we may not reverse the trial court's order on this ground. *See id.*

### B. Post-trial events

Father also argues we should reverse the trial court's conservatorship ruling because the domestic violence charges against him were dismissed on January 5, 2023. However, in an abuse

of discretion review, we are "generally bound by the record before the trial court at the time its decision was made." *In re S.C.*, No. 02-18-00422-CV, 2019 WL 2455612, at \*9 (Tex. App.—Fort Worth June 13, 2019, pet. denied) (mem. op.) (internal quotation marks omitted); *see also, e.g., Carlton v. Trinity Universal Ins. Co.*, 32 S.W.3d 454, 458 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (our review is limited to matters in the appellate record). Because the trial court signed its final order on December 19, 2022, it necessarily did not consider the January 5, 2023 dismissal of the criminal charge against Father. If, as Father appears to contend here, the parties' circumstances materially and substantially changed after the trial court signed its final order, Father's proper recourse is through a trial court proceeding to modify the conservatorship ruling.[6] *See* TEX. FAM. CODE ANN. § 156.101(a); *see also Zeifman*, 212 S.W.3d at 594 n.1 (modification requires "a comparison between the original circumstances of the child and the affected parties *at the time the existing order was entered* with their circumstances at the time the modification is sought") (emphasis added).

We overrule Father's first issue.

### *Record of Post-Verdict Hearings*

In his second issue, Father argues the trial court erred by not requiring a reporter's record of post-verdict hearings on his possession of and access to the children and the amount of his child support payments.

---

[6] In his reply brief, Father argues a modification proceeding is not a viable remedy because: (1) he, not the Department, would bear the burden of proof; and (2) his current, court-appointed counsel would not be entitled to compensation "for the majority of his work" during such a proceeding. He also contends the children's attorney ad litem stated he would move to place the children with Father if the criminal charges were dismissed but then failed to do so. While we sympathize with Father's position, we are not aware of any authority that permits us to reverse the trial court's ruling based on evidence that was not before the court when it ruled.

*Applicable Law*

The Texas Family Code provides that in contested hearings in suits affecting the parent-child relationship, "[a] record shall be made as in civil cases generally unless waived by the parties with the consent of the court." TEX. FAM. CODE ANN. § 105.003(c). Both this court and other courts of appeals have held that section 105.003(c) "places an affirmative duty upon the trial court to ensure that the court reporter makes a record of proceedings involving parent-child relationships." *Garza v. Garza*, 217 S.W.3d 538, 556 n.2 (Tex. App.—San Antonio 2006, no pet.); *In re D.J.M.*, 114 S.W.3d 637, 639 (Tex. App.—Fort Worth 2003, pet. denied).

*Application*

The clerk's record contains judge's notes showing the trial court held post-verdict, pre-judgment hearings on child support, possession, and access on October 19, 2022, November 18, 2022, and December 6, 2022. The judge's notes associated with the October 19 and November 18 hearings indicate that the attorneys for the Department, Mother, Father, and the children were present and that no record was taken. The judge's notes from the December 6 hearing indicate that the attorneys for the Department, Father, and the children were present, but the notes are silent as to whether a record was taken. The reporter's record in this case does not contain a transcript of the three hearings, and the clerk's record does not contain a written request for the preparation of any such records. *See* TEX. R. APP. P. 34.5(a)(9) (clerk's record must include "any request for a reporter's record").

As Father notes, in 1984 this court interpreted the nearly identically worded predecessor to section 105.003(c) as requiring a record to be made even if the parties did not request it. *Ex parte Juarez*, 665 S.W.2d 200, 201 (Tex. App.—San Antonio 1984, no writ) (per curiam). We also held in that case that "[a] mere showing that [the complaining party] was present at the hearing and that he failed to object to the absence of a court reporter is not a showing that he waived his right to a

[reporter's record] and that the court consented to this waiver." *Id.* In contrast, other courts of appeals—including at least one court that agreed section 105.003(c) "places an affirmative duty upon the trial court"—have held a party "may waive the making of a record by express written agreement or by failing to object to the lack of a record during the hearing." *In re D.J.M.*, 114 S.W.3d at 639; *see also Baker v. Curphy*, No. 09-15-00528-CV, 2016 WL 5224753, at *1 (Tex. App.—Beaumont Sept. 22, 2016, no pet.) (mem. op.); *Ex parte Jones*, 700 S.W.2d 15, 16–17 (Tex. App.—Eastland 1985, no writ) (refusing to follow *Ex parte Juarez*).

In 2021, the Texas Supreme Court adopted the holdings in *In re D.J.M.* and *Baker*. *See In re G.X.H.*, 627 S.W.3d 288, 299 n.6 (Tex. 2021) (citing *Baker*, 2016 WL 5224753, at *1 *and In re D.J.M.*, 114 S.W.3d at 639). In *In re G.X.H.*, as in this case, the appellant complained that no record was made of a contested hearing in a SAPCR proceeding. *See id.* The Texas Supreme Court concluded the appellant waived that complaint because he did not contemporaneously object to the failure to make a record. *Id.* To the extent that our opinion in *Ex parte Juarez* conflicts with *In re G.X.H.*, we are bound by the supreme court's opinion. *See, e.g.*, *Lubbock County, Texas v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002); *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 257 (Tex. App.—San Antonio 1999, pet. denied).

Father does not dispute that his attorney was present during the three hearings at issue, and he does not contend that his attorney objected to the court reporter's failure to make a record of the hearings. *See In re D.J.M.*, 114 S.W.3d at 639; *cf., e.g.*, *Wray v. Papp*, 434 S.W.3d 297, 299 (Tex. App.—San Antonio 2014, no pet.) (making of a record cannot be waived by party who is "neither present nor represented by counsel at the hearing"). He also does not contend he was unaware of what happened during the hearings or that he was prevented from participating in them. *See In re K.R.C.*, No. 05-13-01419-CV, 2015 WL 7731784, at *5 (Tex. App.—Dallas Dec. 1, 2015, pet. denied) (mem. op.). Finally, Father does not "argue that the procedures for waiving a

reporter's record were not followed," and we see no indication in the record of any procedural irregularity. *In re K.K.*, No. 02-17-00357-CV, 2018 WL 1630767, at *3 (Tex. App.—Fort Worth Apr. 5, 2018, no pet.) (mem. op.). Under these circumstances, we conclude binding Texas Supreme Court precedent requires us to hold that Father waived his complaint regarding the lack of a reporter's record of the post-verdict hearings. *See In re G.X.H.*, 627 S.W.3d at 299 n.6.

We overrule Father's second issue.

### *Child Support, Possession, and Access*

In his third and fourth issues, Father argues the evidence is legally and factually insufficient to support the portions of the trial court's order that: (1) limit his possession of A.G.B. and G.A.B. to two hours of supervised visitation a week; (2) deny him access to J.M.B. "until [the Department] approves the contact"; and (3) order him to pay child support.

We cannot evaluate the legal and factual sufficiency of the evidence supporting the trial court's order without a "reporter's record showing the evidence and arguments considered by the trial court[.]" *Phillips Motor Co. v. Million Auto Parts*, No. 04-19-00391-CV, 2020 WL 1159062, at *2 (Tex. App.—San Antonio Mar. 11, 2020, no pet.) (mem. op.); *Off. of Att'y Gen. of Tex. v. Koponen*, No. 03-18-00669-CV, 2019 WL 2588509, at *2 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.). Here, as explained above, we do not have a reporter's record of the post-verdict hearings on the child support, possession, access, and supervision issues Father challenges in his third and fourth issues. Precedent we are bound to follow requires us to presume the missing records support the trial court's order. *See, e.g.*, *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam); *In re J.S.P.*, 278 S.W.3d 414, 424 (Tex. App.—San Antonio 2008, no pet.).

We overrule Father's third and fourth issues.

***Appointed Counsel's Fee Invoice***

In his reply brief, Father asks us to reverse the trial court's post-judgment rejection of one of his appointed counsel's fee invoices and to render an order approving that invoice. Father did not raise this issue in his opening brief, and we generally do not consider issues raised for the first time in a reply brief. *See, e.g.*, *Gamboa v. Gamboa*, 383 S.W.3d 263, 274 (Tex. App.—San Antonio 2012, no pet.). Moreover, our review is limited to documents that are part of the appellate record. *See, e.g.*, *Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 305 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *In re V.R.P.*, No. 04-04-00431-CV, 2005 WL 1552641, at *1 (Tex. App.—San Antonio July 6, 2005, pet. denied) (mem. op.). While the invoice at issue is attached to Father's reply brief, neither that invoice nor the post-judgment proceedings regarding the invoice are included in the appellate record. For these reasons, we decline to consider this issue.

## CONCLUSION

We affirm the trial court's order. We grant Mother's appointed counsel's motion to withdraw and remand for the appointment of new appellate counsel for Mother.

Beth Watkins, Justice